*Anthony Marlin Tunnell v. State of Maryland*
No. 28, September Term 2019


**Criminal Procedure – Speedy Trial – Deadline for Trial**. Under a State statute and related court rule, a criminal trial in a circuit court must commence within 180 days of the defendant's first appearance in that court or entry of appearance of defense counsel – a requirement often referred to as the "Hicks rule." Under the Hicks rule, a trial may be continued from the scheduled trial date if the administrative judge (or designee) finds good cause for the continuance. Unless the defendant waives the Hicks rule, a failure to comply with the Hicks rule is to result in dismissal of the charges. Maryland Code, Criminal Procedure Article, §6-103; Maryland Rule 4-271.

**Criminal Procedure – Speedy Trial – Deadline for Trial**. The deadline for commencing trial under the Hicks rule is not automatically extended by the length of time needed for a party to obtain a DNA analysis of evidence. Nor is that deadline automatically extended when a party needs a continuance of the trial date to make a timely disclosure, in accordance with Maryland Code, Courts & Judicial Proceedings Article, §10-915, of the party's intention to introduce DNA evidence. However, either of those circumstances may be good cause for an administrative judge to grant a continuance of the trial date under the Hicks rule.

**Criminal Procedure – Speedy Trial – Postponement of Trial Date – Appellate Review**. A defendant who seeks appellate review of the decision of an administrative judge to grant a continuance of a trial for good cause that ultimately results in a trial date beyond the deadline under the Hicks rule has the burden of showing that the circumstances did not constitute good cause as a matter of law, that the administrative judge abused the judge's discretion in making a finding of good cause, or that there was an inordinate delay in rescheduling the trial.

**Criminal Procedure – Speedy Trial – Postponement of Trial Date – Determination of Good Cause.** Although there was some confusion in the circuit court in this case as to whether a request for a DNA examination of evidence "tolled" the deadline for trial under the Hicks rule, the administrative judge did not abuse his discretion or err as a matter of law when he found good cause for postponing the originally scheduled trial date based on the prosecution's need to provide additional discovery to the defendant. Nor did the defendant carry his burden of demonstrating that there was an inordinate delay in rescheduling the trial date when the trial commenced a little more than a month after the Hicks date.

Circuit Court for Worcester County
Case No. C-23-CR-17-000018
Argument: November 4, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 28

September Term, 2019

_____

ANTHONY MARLIN TUNNELL

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Greene, Clayton, Jr.
    (Senior Judge,
     Specially Assigned),

JJ.

_____

Opinion by McDonald, J.
Watts, J., dissents.

_____

Filed: January 16, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

The aphorism "justice delayed is justice denied" states a principle common to most legal systems.[1] A tool to avoid delay is to set a deadline – the bane and prod of those who must do what needs to be done. Like most rules of general application, deadlines have exceptions. This case concerns the application of an exception to the deadline for the trial of a criminal case in a State circuit court.

Under a State statute and related court rule, collectively known as the "Hicks rule," a criminal trial in a circuit court must commence within 180 days of the first appearance of the defendant or defense counsel in that court, a deadline known as the "Hicks date." Unless the defendant consents to a trial date beyond the Hicks date, a continuance of the trial beyond the Hicks date may be granted only for "good cause."

In this case, the trial of Petitioner Anthony Marlin Tunnell on murder and firearms charges was postponed from the original trial date when the administrative judge found good cause for a continuance based on the State's need to provide additional discovery to the defense. However, both the court and the prosecution apparently believed that the deadline under the Hicks rule was "tolled" or extended for the period of time during which evidence was at a laboratory for DNA analysis. Mr. Tunnell's trial ultimately began approximately 40 days after the Hicks date.

---

[1] The Wikipedia entry for this aphorism documents various statements of this principle ranging from the ancient Hebrew scriptures to the Magna Carta to William Penn to Martin Luther King, Jr.'s Letter from Birmingham Jail.

We hold that the Hicks rule does not incorporate a mechanism for "tolling" or extending the Hicks date. Nevertheless, the administrative judge did not abuse his discretion when he found good cause for the continuance of the trial date and Mr. Tunnell has not carried his burden of demonstrating that there was an "inordinate delay" in the new trial date. Accordingly, we affirm his conviction.

# I

## Background

### A.    The "Hicks Rule"

A criminal trial in a Maryland circuit court must begin within 180 days of certain triggering events. This deadline is set forth in statute and rule. In its current iteration, the statute provides:

> (a)   (1)   The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:
>
> > (i)    the appearance of counsel; or
> >
> > (ii)   the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.
>
> (2)   The trial date may not be later than 180 days after the earlier of those events.
>
> (b)   (1)   For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:
>
> > (i)    on motion of a party; or
> >
> > (ii)   on the initiative of the circuit court.
>
> (2)   If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be

2

made by the county administrative judge or that judge's designee for good cause shown.

(c)     The Court of Appeals may adopt additional rules to carry out this section.

Maryland Code, Criminal Procedure Article ("CP"), §6-103.  This Court has adopted a rule consistent with the statute.  Maryland Rule 4-271.

As is evident, the statute does not specify the consequences of a failure to begin a trial by the statutory deadline.  In a 1979 decision involving prior versions of the statute and rule,[2] this Court held that compliance with the deadline in the rule was mandatory and that any postponement beyond that deadline must be authorized by the administrative judge for the requisite cause.[3]  *State v. Hicks*, 285 Md. 310, 318, *on motion for reconsideration*, 285 Md. 334 (1979).  The Court held that a failure to commence a trial in accordance with this timeline necessitates dismissal of the charges with prejudice.  *Id*.  The requirements

---

[2] The statute was enacted in 1971 and codified as Maryland Code, Article 27, §591.  Chapter 212, Laws of Maryland 1971.  In its original form, the statute set the deadline for trial at "six months" after a triggering event.  The statute was later amended to replace that time frame with the roughly equivalent "180 days," a specification perhaps more amenable to precise computations.  Chapter 378, Laws of Maryland 1980.  As part of code revision, the statute was recodified as amended, without substantive change, as part of the then new Criminal Procedure Article in 2001.  Chapter 10, §2, Laws of Maryland 2001.

As first adopted in 1977, the rule was codified as Maryland Rule 746 and provided that a trial should commence within 120 days of a triggering event.  In November 1979, the Court amended the rule on an emergency basis to have the same deadline as the statute.  The rule was recodified as Maryland Rule 4-271 in 1984.

[3] The original versions of the statute and rule required a showing of "extraordinary cause" to change a trial date.  Shortly after the *Hicks* decision, the General Assembly amended the statute to substitute a standard of "good cause."  Chapter 378, Laws of Maryland 1980.  This Court amended the rule to conform it to the statutory amendment.

3

established by the statute and rule are often referred to colloquially as the "Hicks rule" and the deadline for commencing trial under those provisions as the "Hicks date."

As discussed at greater length later in this opinion, the Hicks rule was intended primarily to carry out the public policy favoring the prompt disposition of criminal cases, independent of a defendant's constitutional right to a speedy trial under the Sixth Amendment of the federal Constitution and Article 21 of the Maryland Declaration of Rights. Compliance with the Hicks rule would also presumably satisfy the constitutional constraint. *See* 5 W. LaFave, *et al.*, Criminal Procedure §18.3(c) & n. 71 (4th ed. Dec. 2019 update) (noting that state speedy trial statutes usually impose stricter time limits than the constitutional standard).

## B. *The Murder of James Allen and the Prosecution of Mr. Tunnell*

On the evening of December 1, 2016, 26-year old James "Bumpy" Allen was murdered in a shooting in Pocomoke City. There apparently were no eyewitnesses to the shooting, although at least one person observed Mr. Allen shortly after he was shot, staggering and bloodied from his wounds. The police retrieved various items from the scene of the murder, which were sent off for forensic analysis,[4] and commenced an investigation.

Shortly after the murder, Mr. Tunnell was taken into custody. On January 24, 2017, a grand jury in the Circuit Court for Worcester County returned a six-count indictment

---

[4] The results of that analysis ultimately did not establish a direct connection to Mr. Tunnell. Neither party introduced the forensic results at trial, although, as recounted later in this opinion, Mr. Tunnell considered doing so.

against him related to the murder. Mr. Tunnell was tried before a jury on three of those counts during September 11-12, 2017.[5] The State's case consisted of:

- testimony of Mr. Tunnell's niece concerning text messages that she received from Mr. Tunnell indicating that he believed that her boyfriend and Mr. Allen had stolen a marijuana stash that had been hidden near the Tunnell residence in Virginia and that Mr. Tunnell was planning a violent revenge;

- testimony of others who observed Mr. Tunnell in Pocomoke City near the time and location of the shooting with two men in a car wearing ski masks;

- eyewitness testimony that Mr. Allen was seen staggering and dying on the street shortly after the shooting;

- testimony concerning the recovery of physical evidence, including a ski mask, at the scene of the shooting; and

- telephone company records documenting Mr. Tunnell's text messages.

Mr. Tunnell elected not to testify and called one alibi witness. After deliberating for an hour, the jury found Mr. Tunnell guilty of first-degree murder.[6]

Mr. Tunnell appealed his conviction, raising a number of issues that, he argued, required reversal of his conviction.[7] In an unreported opinion, the Court of Special Appeals

---

[5] Prior to the trial, the State's Attorney *nolle prossed* three counts charging Mr. Tunnell with various firearms violations.

[6] At the close of the State's case, the trial judge granted Mr. Tunnell's motion for judgment of acquittal on one count charging possession of a firearm by a person previously convicted of drug trafficking, in violation of Maryland Code, Public Safety Article, §5-133(c). The jury acquitted Mr. Tunnell of the remaining count charging him with use of a firearm in the commission of a crime of violence, in violation of Maryland Code, Criminal Law Article, §4-204(b).

[7] Among those issues were an alleged discovery violation by the prosecution, the sufficiency of the evidence to support Mr. Tunnell's conviction, the Circuit Court's

rejected those contentions and affirmed his conviction. *Tunnell v. State*, 2019 WL 1313412 (March 22, 2019). Mr. Tunnell filed a petition for a writ of *certiorari*, which we granted in part.

The issue before us concerns neither the sufficiency of evidence at trial nor any trial ruling made by the Circuit Court. Rather, it concerns whether the timing of Mr. Tunnell's trial complied with the Hicks rule. Accordingly, we will recount in some detail the pretrial proceedings concerning the scheduling of Mr. Tunnell's trial.

## C.     *Pretrial Proceedings*

An Assistant Public Defender entered his appearance on behalf of Mr. Tunnell on February 2, 2017. It is undisputed that, as a result, the deadline for commencing Mr. Tunnell's trial – the Hicks date – was August 1, 2017. The Circuit Court issued a notice that set April 7, 2017 as the date for a hearing on pretrial motions and May 9, 2017 as the date for the trial – a date well before the Hicks date. During the course of four pretrial proceedings before four different judges of the Circuit Court, the trial date was ultimately postponed to September 11, 2017 – a date after the Hicks date.

### 1.     *April 7 Hearing*

On April 7, 2017 – the date originally designated for a pretrial motions hearing – the parties appeared before the administrative judge of the Circuit Court. Mr. Tunnell was represented by the Assistant Public Defender. The State's Attorney informed the judge

---

decision not to grant a mistrial as a result of a witness' reference to Mr. Tunnell's incarceration, and the alleged violation of the Hicks rule, which is the subject of this opinion.

6

that a "large package" of discovery materials had been sent to defense counsel, but that there were additional investigative reports, audio recordings, and a requested DNA examination that the State still expected to receive and turn over to the defense in discovery. The State's Attorney requested a postponement of the trial date and asked that the currently scheduled trial date (May 9, 2017) be converted to a status conference. Referring to what apparently was a widely-shared misconception, the State's Attorney told the judge that a postponement granted as a result of the pending DNA examination would "toll" the Hicks date and cited Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §10-915.[8] Defense counsel neither opposed nor consented to a postponement, but expressed a willingness to go to trial as soon as discovery was made and the court set a trial date.

The administrative judge granted the State's request, stating that the need to complete discovery "alone" was good cause for a continuance. Like the State's Attorney, the administrative judge also specifically referred to the prospective DNA examination as a basis for a continuance as "it does, in fact, toll the Hicks date." The court did not set a new trial date and left May 9, 2017 on the calendar as a motions hearing date.

---

[8] CJ §10-915 concerns the admissibility of DNA profiles in criminal proceedings and requires that a party seeking to introduce such evidence provide notice and discovery to other parties by at least a specified number of days before a proceeding. CJ §10-915(d) provides a trial court with discretion to grant a continuance if the party seeking admission of such evidence is unable to make a timely disclosure.

As explained later in this opinion, a delay occasioned by an effort to obtain a DNA analysis or to make a timely disclosure under CJ §10-915 may be "good cause" for obtaining a continuance of a trial date beyond the Hicks date. However, this statute does not provide for automatic "tolling" of the Hicks date. *See* Part II.B. of this opinion.

Three weeks later, the Assistant Public Defender withdrew his appearance on behalf of Mr. Tunnell. Private defense counsel entered her appearance on April 29, 2017. As a result, the May 9 hearing was converted to another status conference.

### 2. May 9 Status Conference

On May 9, 2017, the Deputy State's Attorney and Mr. Tunnell's new defense counsel appeared before a different judge of the Circuit Court for the status conference. The prosecutor moved "to continue what is an ongoing postponement." He noted that he had just provided Mr. Tunnell's new counsel with "a voluminous amount of discovery," that he expected to make additional discovery, and that, while a preliminary DNA report had been received, he expected to receive the full report soon. He asked for a postponement to a "date not yet determined." He repeated the understanding that the delay for the full DNA report tolled the Hicks date and advised that he would call the assignment office after the report arrived to determine a date convenient for all parties and the court. Defense counsel joined the motion while expressing Mr. Tunnell's desire to get a trial date as soon as possible. The Circuit Court granted the motion.

### 3. August 8 Status Conference

Three months later, on August 8, 2017, the parties appeared for a status conference before yet another judge of the Circuit Court. Since the previous hearing, no motions had been filed by either side as to the trial date.[9] However, the status conference focused entirely on the effort to schedule a trial date in compliance with the Hicks rule.

_____

[9] As part of a form omnibus motion filed at the outset of the case, the Assistant Public Defender who initially represented Mr. Tunnell had asserted that the prosecution

The State's Attorney presented the court with transcripts of the April and May status conferences and summarized the prior events – the scheduling of the original trial date of May 9 in light of a Hicks date of August 1, 2017, the delay in obtaining the full DNA report, the finding of "good cause" for a postponement of the trial by the administrative judge, the receipt of the DNA report on May 18 and its delivery to defense counsel.[10] The prosecutor stated that one of the reasons he had asked for the status conference was to set a trial date consistent with what he referred to as the "new Hicks date," which he identified as September 12, 2017. That calculation was apparently based on the understanding that the delay in obtaining the DNA report "tolled" the Hicks date for a period equivalent to that delay, which the prosecutor calculated to expire on September 12.[11] He asked the court to schedule a motions hearing and the trial before that date. He also detailed some potential scheduling issues, but promised that the State would be ready to try the case on

---

was barred as a result of, among other things, a violation of the Hicks rule. That omnibus motion was filed together with the defense counsel's entry of his appearance on February 2, 2017 – the *first* day of the 180-day period under the Hicks rule. As best we can tell, neither party later made reference to that motion in the Circuit Court. In any event, a form omnibus motion that prematurely raises a host of issues that may never pertain to the particular case may be ineffective to preserve an appellate issue. *See Sinclair v. State*, 444 Md. 16, 27-36 (2015).

[10] The State's Attorney informed the court that the State had decided not to use information from the report in its case.

[11] The State's Attorney also indicated that he wished to have the Circuit Court clerk's office make corrections in the court's electronic case filing system (MDEC) to reflect the "new" Hicks date of September 12. That request was apparently accomplished. A review of the electronic record for the Circuit Court case reveals a "comment" for the date of the hearing that alludes to a "suspension" of the Hicks date for 41 days, consistent with the tolling theory.

9

September 11. The court clerk agreed with the prosecutor's calculation of the "tolling" period and the Circuit Court accepted the premise that September 12 was the new deadline for commencing the trial.

Defense counsel then raised a question as to whether the Hicks date could be tolled. While acknowledging that delays in the receipt of DNA reports had been a commonly-accepted basis for postponing a trial date, she questioned whether there was a basis in statute or case law for "tolling" the Hicks date. Defense counsel stated:

> …What I'm trying to understand and again, maybe it's not – my understanding it needs to be, you know, solidified here, but the Court's understanding. I don't understand why – I'm trying to find out where the precedent is for tolling Hicks. I know it's always been a procedure that we've done, we've always tolled Hicks with regard to DNA. I would like to know if there's a statute or case that specifically says that, just for satisfaction on that particular issue. … Our argument would be that even though – even if you did toll Hicks and even if the second postponement was to get the DNA, our problem is that there was still enough time to set the case back in well within the Hicks date in compliance with the DNA coming back.

Defense counsel took the position that the original August 1 Hicks date still applied and that, in the absence of a postponement that explicitly took the trial date beyond that date, it had remained the obligation of the State and the Circuit Court to bring Mr. Tunnell to trial by that date. The upshot of that argument was that Mr. Tunnell's trial had not begun by the deadline set by statute and rule. In response to questions from the Circuit Court, defense counsel conceded that she had agreed at the May 9 hearing to seek a new trial date from the clerk's office jointly with the prosecutor, but had not done so.

Defense counsel also argued that the delay in obtaining the full DNA report had been unnecessary because the prosecution had unnecessarily obtained the report in two

10

parts, and suggested that there had been no basis for the indefinite postponement that the administrative judge had previously granted. After the Circuit Court pointed out that the transcript of the earlier proceeding demonstrated that the administrative judge had explicitly found "good cause" for the postponement, defense counsel returned to the issue of "tolling" the Hicks date as a result of a request for a DNA examination. Defense counsel argued:

> Your Honor, the argument is that if there is a tolling of Hicks then why – why did all of these other cases go to the Court of Appeals? I don't see in the cases that I'm pulling up anything about tolling Hicks or about that being an issue. So I just would like to have some authority so we know what we're arguing about on how the tolling of Hicks works. Is it a statutory tolling or is it by case law? And again, I wasn't able to find anything on it. The cases that I found were situations basically arguing Hicks, but they don't say anything about well, the case was tolled, I don't see anything to that effect.

In response, the Circuit Court noted that the potential for a Hicks date to be "tolled" appeared to be "recognized," although that recognition was "not dispositive." The court also concluded that the administrative judge's finding of "good cause" for a postponement "still stands irrespective of the Hicks [tolling] analysis." The prosecutor offered to conduct some research on the issue. The court and the parties worked out the schedule for a motions hearing and trial in light of the court's understanding of the "revised Hicks date" of September 12, 2017 and the constraints of defense counsel's calendar.[12] A pretrial motions

---

[12] The court offered to schedule the trial in August, but defense counsel stated that her schedule did not permit her to agree to an August trial date.

11

hearing was scheduled for September 1 and the trial was scheduled to commence on September 11.

At the conclusion of the hearing, the court and the parties discussed whether Mr. Tunnell would waive the Hicks deadline in order for the defense to present the arguably favorable DNA results[13] at trial – which would require 45 days advance notice by the defense under CJ §10-915. Defense counsel stated that Mr. Tunnell did not wish to waive the Hicks deadline for that purpose if it would preclude him from raising the Hicks issue on appeal. The Circuit Court declined to provide an "advisory opinion" on that question. The defense elected not to waive the Hicks deadline at that juncture pending defense counsel's research concerning "options," such as an interlocutory appeal on the Hicks date issue.[14]

### 4. September 1 Motions Hearing

On September 1, 2017, the parties appeared for the motions hearing before another judge, who was also assigned to try the case. After several defense motions were resolved, defense counsel again raised the question whether the delay in obtaining DNA reports "tolled" the Hicks date and whether the State had "dragged out" that delay unnecessarily. The prosecutor responded that it was "a collaterally estopped issue" – *i.e.*, that the matter had already been ruled upon at the August 8 hearing.

---

[13] As noted above, the DNA examination apparently did not directly connect any of the items tested to Mr. Tunnell.

[14] Defense counsel presumably determined that an interlocutory appeal was not available or desirable as no such appeal was filed.

12

The Circuit Court agreed with the State, telling defense counsel:

> Well, I don't even know what you're asking from the Court. The Hicks date from the Court's perspective I gather has been determined at a prior hearing by a judge of this court. And it doesn't seem to me there's anything more to talk about with respect to that.

> If you believe that that decision by that judge was incorrect and some remedy flows from that and your client is ultimately found guilty of any of these charges, then I suppose that's an appellate issue to raise.

The trial commenced ten days later, as scheduled, on September 11, and concluded the following day.

## II

## Discussion

### A.   *Preservation*

Mr. Tunnell asserts that the charges against him should have been dismissed when his trial did not commence by August 1, 2017, because the Circuit Court relied on an erroneous theory that the Hicks date had been "tolled" or extended when the court scheduled the trial after that date.[15]  As a threshold matter, the State argues that Mr. Tunnell did not adequately preserve the Hicks date issue for appellate review.[16]

An appellate court "ordinarily" will not address an issue unless "it plainly appears by the record to have been raised in or decided by the trial court." Maryland Rule 8-131(a).

---

[15] Mr. Tunnell does not assert that his constitutional right to a speedy trial was violated.

[16] The Court of Special Appeals agreed with the State that Mr. Tunnell had not preserved the issue, but apparently believed that the question was sufficiently close that it proceeded to address the merits of the issue in its opinion.

An appellate court may address an unpreserved issue "if necessary or desirable to guide the trial court." *Id.*

At the outset of the case, the Assistant Public Defender who initially represented Mr. Tunnell filed a formal, but premature, motion to bar his prosecution for violation of the Hicks rule.[17] There was no basis for such a motion at that time, as August 1 was six months in the future and neither the court nor the parties ever referred to that motion, as best we can tell. The successor defense counsel did not specifically renew that motion and ask for dismissal of the indictment for violation of the Hicks rule when the trial did not begin by August 1. But it is also true that the Circuit Court held an extensive hearing on August 8, 2017, devoted exclusively to the Hicks issue and the selection of an appropriate trial date – a hearing that occupies 36 pages of transcript. At that hearing, defense counsel repeatedly questioned the validity of the "tolling" theory that, in the belief of the State and the Circuit Court, established a "new" Hicks date of September 12. Indeed, the State's Attorney volunteered to provide the court with legal authority for the tolling theory after that hearing. No such legal justification was ever provided to the court.

It seems clear that the issue of the computation of, and compliance with, the Hicks date was "raised in" the Circuit Court, even if one believes that it was not conclusively "decided by" that court, pending the State's provision of legal authority for the tolling theory. Perhaps this was not a model for how a defendant should preserve an issue for appellate review. But in this case the purpose of the preservation requirement was

---

[17] *See* footnote 9 above.

14

adequately served. It cannot be said that either the State or the Circuit Court was sandbagged by this issue. It is evident from the dialogue between defense counsel and the Circuit Court at the conclusion of the August 8 conference, and the statements of the trial judge and prosecutor at the September 1 motions hearing, that the parties and the court believed that the defense had raised – and lost – the issue of compliance with the Hicks rule in the Circuit Court and that it was a potential appellate issue if the trial resulted in a conviction. Moreover, given the confusion in the trial court concerning the effect of CJ §10-915 on the Hicks date, it appears useful to address this issue as "necessary or desirable to guide the trial court."

## B.      *The Tolling Issue*

It appears from the discussion at the pretrial hearings that the two prosecutors, as well as the Circuit Court, were under the misimpression that CJ §10-915 "tolls" the Hicks date in some way. The calculations done during the pretrial hearings in the Circuit Court appeared to assume that the length of the interval between the date that evidence is sent to a laboratory for DNA analysis and the date the results are received is to be added to the 180-day time limit. In addition, there appeared to be an assumption that, if a party belatedly gave notice of an intent to use DNA evidence, the length of a continuance necessary to comply with the disclosure requirements of CJ §10-915 would necessarily be tacked onto the 180-day time limit under the Hicks rule.

There are many speedy trial laws that operate in the manner imagined in the trial court. Such statutes identify an event (such as the appearance of counsel) that triggers a speedy trial clock, specify a number of days within which a defendant must be brought to

15

trial, and exclude certain time periods from the computation of those days. In other words, the speedy trial clock may be stopped or "tolled" when such an event occurs and then restarted later. *See* 5 W. LaFave, *et al.*, Criminal Procedure §18.3(c) (4th ed. Nov. 2018 update).

For example, under the federal Speedy Trial Act,[18] a defendant must be brought to trial within 70 days of indictment, but various periods of time are excluded in computing those 70 days – *e.g.*, the period between the filing of a motion and the conclusion of a hearing or other disposition of that motion.[19] Some of the excluded periods are limited to delays in the proceedings deemed reasonable, but other periods are excluded without reference to whether the particular delay is reasonable. The exclusion of such time periods from calculations under the Speedy Trial Act is sometimes referred to as "tolling" the speedy trial clock. *See, e.g.*, *United States v. Stoudenmire*, 74 F.3d 60, 64 (4th Cir. 1996).

Unlike the federal Speedy Trial Act or similar speedy trial statutes in other jurisdictions, the Maryland statute and rule do not rely on a system of counting and excluding time periods to determine the deadline for commencing a criminal trial. The Maryland General Assembly, and this Court, elected not to require such mathematical computations, but instead opted for a system with a benchmark date – the Hicks date – with

---

[18] 18 U.S.C. §3161 *et seq.*

[19] Also in contrast to the Hicks rule, a dismissal of charges under the federal Speedy Trial Act may be with or without prejudice, depending upon several factors. 18 U.S.C. §3162.

allowance for a continuance past that date for good cause.[20]  Thus, under the Hicks rule, a request for a DNA examination of evidence does not automatically extend or toll the deadline for trial.

A party's need to obtain a forensic analysis of evidence, such as a DNA examination, may well constitute "good cause" for an administrative judge to grant a continuance that extends a trial date beyond the Hicks date.  *See, e.g.*, *Moody v. State*, 209 Md. App. 366, 372-75 (2013); *Ashton v. State*, 185 Md. App. 607, 619-20, *cert. denied*, 410 Md. 165 (2009).  Similarly, the circumstances that support a continuance under CJ §10-915 in order for a party to provide the requisite notice of DNA evidence may also amount to good cause for a continuance for purposes of the Hicks rule.  *Ashton*, *supra.*  But a continuance authorized by CJ §10-915 does not automatically toll the Hicks date in the manner imagined in the Circuit Court in this case.

In its appellate filings in this case, the State has appropriately conceded that the request for a DNA examination did not automatically toll the Hicks date under CJ §10-915

---

[20] The courts have also recognized that, although not explicitly stated in the statute and rule, a defendant may consent to a trial date beyond the Hicks date.  *See* Part II.C.1 of this opinion.

or otherwise.[21]   The question then is, putting the tolling theory aside, whether the circumstances of this case require dismissal of the indictment under the Hicks rule.[22]

## C.    *Whether the Hicks Rule Requires Dismissal in the Absence of "Tolling"*

### 1.    *The Policies Underlying the Hicks Rule*

Prior to the *Hicks* decision, it was widely understood that the deadline for trial set forth in statute and rule was directory rather than mandatory.  That understanding was based in part on the absence of any sanction in the statute or rule for failure to meet the deadline – an understanding that was initially confirmed with respect to the statute by the appellate courts.  *See Young v. State*, 15 Md. App. 707 (Moylan, J.), *aff'd*, 266 Md. 438 (1972).[23]  The *Hicks* decision upended that understanding.

In *Hicks,* the trial was scheduled well within the rule's (then) 120-day deadline, but postponed when it turned out that the defendant was incarcerated in another state.  At a

---

[21] The dissenting opinion argues that the State's concession means that there is not a "justiciable controversy" before the Court.  However, the parties reach different conclusions concerning the consequences in this case of the absence of tolling under the Hicks rule and have extensively briefed their adverse positions.  As set forth in the text, the issue of compliance with the Hicks rule has been adequately preserved under Maryland Rule 8-131(a).

[22] In a somewhat similar context, the Court of Special Appeals rejected a trial court's indication that the Hicks date was "tolled" while a defendant was sent for a competency evaluation, but the intermediate appellate court went on to assess whether a postponement for that purpose amounted to good cause for a continuance beyond the Hicks date.  *See Thompson v. State*, 229 Md. App. 385, 396-99 & n.5 (2016).

[23] At the time of the *Young* decision, only the statute was in effect; the court rule had not yet been adopted.

18

motions hearing approximately 40 days past the deadline,[24] the circuit court dismissed the charges for failure to comply with the deadline. The circuit court held that the 1977 adoption of the court rule set forth a mandatory deadline for commencement of a trial in a criminal case and that the failure to try the defendant in that case by the deadline required dismissal of the charges.

On appeal, this Court agreed that the rule established a mandatory deadline, although it also concluded that there was "extraordinary cause" – the standard set forth in the rule at that time – for continuance of the trial past the deadline. The Court therefore reversed the dismissal of the charges.[25]

The Court explained that its conclusion that the rule was mandatory was based on the underlying purpose of the statue and court rule "to obtain prompt disposition of criminal charges." 285 Md. at 316. Quoting a prior decision of the Court of Special Appeals, the Court observed that postponement of criminal trials resulted in trial courts and court-supporting agencies "spinning their wheels," wasted time of attorneys and witnesses, and frustrated other persons involved in the system, all of which impaired public confidence in the courts. *Id*. at 316-17. The Court was careful to distinguish this rationale from a

---

[24] The deadline under the rule was a date in late August 1978; the motions hearing was held on October 2, 1978.

[25] This Court found that the prosecutor's explanation for the non-appearance of the defendant at the scheduled trial date – that the defendant was incarcerated in another state – was an "implicit" request for a continuance and that the trial court's decision to postpone the trial for that reason satisfied the "extraordinary cause" standard. 285 Md. at 318-19.

defendant's constitutional right to a speedy trial, stating that the court rule "stands on a different legal footing" from the constitutional speedy trial requirement. *Id*. at 320.[26]

Although the Court in *Hicks* found that the "extraordinary cause" standard was met under the circumstances of that case and allowed the prosecution to go forward, its holding set a strict standard that presaged dismissal of cases scheduled under the prior understanding of the rule, with results that could be unfair and unforeseen in pending prosecutions. There were four immediate moderating responses to the sweeping nature of the *Hicks* holding – three provided by the Court itself.

First, in a supplemental opinion filed in response to the State's motion for reconsideration in *Hicks*, the Court specified that the Hicks rule would be "applied prospectively only" – that is, only to future prosecutions and pending cases in which the 120-day period had not yet begun to run. *Id*. at 334-38. This avoided the potential windfall to defendants in existing cases where trials had been scheduled beyond the 120-day deadline on the understanding that the rule was directory.

Second, for those cases that were subject to the new understanding of the rule, the Court indicated in the same supplemental opinion that dismissal of criminal charges would be "inappropriate" in situations where the defendant, personally or through counsel, seeks or expressly consents to a trial date that does not comply with the Hicks rule. *Hicks,* 285

---

[26] The Court has emphasized this distinction in subsequent cases. *See, e.g., Dorsey v. State*, 349 Md. 688, 701 (1998) ("[T]he mechanism of the *Hicks* Rule serves as a means of protecting society's interest in the efficient administration of justice. The actual or apparent benefits [it] confer[s] upon criminal defendants are purely incidental.").

Md. at 335-36.[27]  While neither the statute nor the rule provided for such an exception, this gloss on the statute and rule eliminated the potential for manipulation of the (newly understood) mandatory rule by a defendant agreeing to a postponement and then seeking dismissal based on that postponement.

Third, a few months after the *Hicks* decision, in an emergency measure that became effective immediately, the Court amended the court rule to extend the deadline for commencement of a trial from 120 days to 180 days – the same deadline as the statute.  The Court thereby lengthened the mandatory deadline for commencing trial under the rule by 50 percent of the prior deadline.

Fourth, the General Assembly, at its next session following the *Hicks* decision, loosened the standard under the statute for allowing a continuance beyond the mandatory deadline from "extraordinary cause" to "good cause."  Chapter 378, Laws of Maryland 1980.  This Court followed suit by promptly broadening the standard under the court rule to the same effect.  *See State v. Frazier*, 298 Md. 422, 458-62 (1984) (recognizing that this amendment of the statute and rule broadened the grounds on which a continuance might be granted); *State v. Toney*, 315 Md. 122, 130-31 (1989) (same).

Less immediately, in a number of cases decided in the years shortly after *Hicks*, the Court also made clear that the unavailability of a judge, prosecutor, or courtroom – or general court congestion in a particular jurisdiction – could satisfy the good cause standard

---

[27] The Court also clarified that dismissal was not an appropriate sanction for a failure, within 30 days of a triggering event, to set a trial date – as required by the statute and rule.  *Hicks,* 285 Md. at 335.

for a continuance under the Hicks rule. *See, e.g., State v. Frazier*, 298 Md. 422 (1984) (overcrowded docket); *State v. Beard*, 299 Md. 472 (1984) (unavailability of judge or jury to hear case); *State v. Bonev*, 299 Md. 79 (1984) (general court congestion); *Pennington v. State*, 299 Md. 23, 30-31 (1984) (caseload volume); *State v. Brookins*, 299 Md. 59 (1984) (unavailability of a court); *State v. Toney*, 315 Md. 122 (1989) (unavailability of prosecutor).

At first glance, some of these developments appear at odds with the underlying policy recognized in *Hicks* of ensuring the public interest in the "prompt disposition of criminal cases." For example, if this is the policy at stake – as opposed to the defendant's constitutional right to a speedy trial – why is a defendant alone able to waive the deadline and thereby waive the *public* interest in prompt disposition of a criminal case?[28] Similarly, allowing general court congestion to be "good cause" for extending a trial date beyond the Hicks date would appear to bow to the cause of delays in the criminal justice system rather than eliminate them.

The answer appears to be that there is more than one public policy in play here. The dismissal sanction that the Court has read into the statute and rule must also take account of the public interest in the disposition of criminal cases *on the merits* – whether acquittal

---

[28] Indeed, in a subsequent case the Court explained that the holding in *Hicks* that dismissal is "inappropriate" when a defendant expressly consents to a continuance of the trial beyond the Hicks date is not based on a "waiver" of a right possessed by the defendant, reiterating that the Hicks rule is not a "codification" of the defendant's constitutional speedy trial right, but rather a "prophylactic measure" to further a public interest in the "prompt disposition of criminal trials." *State v. Brown*, 307 Md. 651, 657 (1986) (citations and internal quotation marks omitted).

or conviction. In holding that dismissal of charges was not appropriate under the Hicks rule in *Farinholt v. State*, 299 Md. 32, 41 (1984), this Court explained that "[d]ismissal of a serious criminal case, on grounds unrelated to the defendant's guilt or innocence, is a drastic sanction" to be used "only … when … needed" to further the goal of judicial efficiency. A criminal justice system can only call itself a *justice* system if cases are generally decided on their merits. The Hicks rule is not simply a mechanism for efficiently clearing dockets in a statistical sense.[29]

In this light, it makes sense that a defendant may consent to a trial beyond the Hicks date, as the defendant is the individual with the most at stake in the disposition of the charges on the merits. The blanket lengthening of the deadline from 120 days to 180 days for trial and the liberalizing of the grounds for a postponement without risk of dismissal recognized a need to allow a case to be decided on the merits after the deadline, if there was a good reason for doing so. Thus, while the speedy trial requirement of the Hicks rule is a mandate that must be complied with at the risk of jeopardizing the prosecution, it is a mandate that must be carried out in a common sense way.

With those principles in mind, we turn first to the standard of appellate review of a decision to continue a criminal case that results in a trial past the Hicks date and then apply that standard of review to the circumstances of this case.

---

[29] Of course, the defendant's constitutional right to a speedy trial reflects an overarching policy to avoid delay in bringing a defendant to trial. As the Court observed in *Farinholt,* even if dismissal would not be appropriate under the Hicks rule, a defendant "remains protected by his federal and state constitutional rights to a speedy trial." 299 Md. at 41.

## 2.        *Appellate Review of a Decision to Continue a Trial Date*

To assess the consequences of a postponement of a criminal trial past the Hicks date, courts have evaluated the delay in two steps:  (1) Was there "good cause" for the administrative judge to grant a postponement of the scheduled trial date? (2) Was there an inordinate delay from the scheduled trial date to the new trial date in commencing the trial? *See Rosenbach v. State*, 314 Md. 473, 479-80 (1989); *Frazier*, 298 Md. at 448.

An administrative judge's determination that there is good cause for a continuance is "a discretionary matter, rarely subject to reversal upon review."  *Frazier,* 298 Md. at 451.  The defendant must show an abuse of discretion or a lack of good cause as a matter of law.  *State v. Fisher*, 353 Md. 297, 307 (1999).  The critical determination for appellate review is the postponement that extends the trial date beyond the Hicks date, whether or not the administrative judge was precisely aware of the relation of postponement to the Hicks date at the time that judge granted the continuance.  *Fisher*, 353 Md. at 305-6; *Goins v. State*, 293 Md. 97, 111-12 (1982).[30]

The issue of inordinate delay is also reviewed under an abuse of discretion standard. *State v. Brown*, 355 Md. 89, 98 (1999).  The defendant has the burden of demonstrating that a delay was excessive, in view of all the circumstances of the case.  *Rosenbach*, 314

---

[30] In the *Hicks* case, this Court concluded that a continuance satisfied the requisite standard under the rule, even though the administrative judge neither made an explicit finding as to "extraordinary cause" nor made any reference to the Hicks date when he granted the continuance that ultimately resulted in a trial date at least 40 days past the Hicks date.

Md. at 479. If a defendant makes a prima facie showing of inordinate delay, the burden shifts to the State to justify that delay. *Frazier*, 298 Md. at 462.

3.      *Compliance with the Hicks Rule in this Case*

*Whether there was good cause for a postponement*

In this case, the critical postponement was the indefinite postponement granted by the administrative judge on April 7.[31] There is no question that there was good cause for the administrative judge's action in granting the continuance that ultimately took the trial past the Hicks date. As outlined above, the administrative judge found good cause for postponing the trial date based on the State's recent provision of discovery to the defense and the anticipated provision of additional discovery, including a DNA report, in the future. That justification remained true on May 9 – the originally scheduled trial date – as Mr. Tunnell had obtained new defense counsel, who was just receiving the prior discovery; additional discovery, including the DNA report, remained outstanding. Indeed, the defense understandably joined the motion to continue the postponement at the time. The specific length of the postponement was only resolved, and a new trial date set, at the status conference on August 8 (Even then, it was not clear initially whether the defense intended to present the DNA results at trial and whether additional time would be necessary for the defense to make the requisite notice under CJ §10-915).

_____

[31] As the State concedes, defense counsel's consent to the continued postponement on May 9 does not bring this case within the consent exception to the dismissal sanction as the May 9 action was not the critical postponement for purposes of the Hicks rule. However, it does provide some context in assessing whether the delay in bringing the case to trial was inordinate.

25

While the court and the prosecution also labored under a misunderstanding that CJ §10-915 had the effect of "tolling" the Hicks date when a DNA examination is requested, the administrative judge did not rely on that theory alone when he granted the continuance on April 7. The administrative judge's determination that a continuance was necessary for the provision of discovery was well within his discretion; nor was it an error of law.[32]

*Whether there was inordinate delay in the rescheduled trial date*

This case involved a 125-day delay from the original trial date (May 9) to the new trial date ultimately selected (September 11).[33] This was likely due to the fact that, at the April 7 hearing the administrative judge did not continue the trial to a specific future date. The administrative judge apparently believed that the choice of a new trial date was being

---

[32] Mr. Tunnell relies primarily on *Calhoun v. State*, 299 Md. 1 (1984). In that case, trial of two co-defendants was scheduled to commence five days before the Hicks date. The circuit court severed the trials of the defendants and proceeded with the trial of the first defendant. By the time the administrative judge set a new date for trial of the second defendant it was already past the Hicks date. This Court held the administrative judge's retroactive finding of good cause for the continuance did not comply with the Hicks rule, and thus dismissal of the charges was required. This case is readily distinguishable from *Calhoun* as the administrative judge granted the critical postponement based on a finding of good cause well before the Hicks date.

[33] This delay exceeded the periods between a scheduled trial date and the rescheduled trial date in most reported cases. *See, e.g., Fisher,* 353 Md. at 310-11 (77 days); *Rosenbach,* 314 Md. at 499 (78 days); *Bonev,* 299 Md. at 81 (101 days); *Brookins,* 299 Md. at 61-62 (104 days); *Frazier* 298 Md. at 435-45, 462 (consolidated case involving postponements of 80 to 116 days). However, unlike this case, each of those cases involved postponements to a specific new trial date. In a case in which a continuance was granted without a specific new trial date, other points of comparison may be more appropriate. *See State v. Parker*, 347 Md. 533 (1995) (in case in which trial date was indefinitely postponed after defendant apparently absconded, the Court looked to period between the defendant's subsequent arrest and the new trial date to assess whether there was inordinate delay).

deferred for a month to the hearing scheduled for the original May 9 trial date.  But that became unrealistic when, shortly before the May hearing, Mr. Tunnell hired a new defense counsel who understandably joined in a motion at that time to continue the indefinite postponement.  A more relevant point of comparison in this case would measure the new trial date that was later selected against the Hicks date.

With reference to the Hicks date, trial commenced on September 11 – 41 days after the Hicks date of August 1.  That delay might have been shorter, as the Circuit Court was willing to schedule the trial in August, but defense counsel's schedule did not allow for an August trial.  That delay also compares favorably to delays in other cases in which the Court concluded that the delay either was not inordinate or did not shift the burden to the State to justify the delay on appeal.  *See, e.g., Fisher*, 353 Md. at 310-11 (delay of 42 days beyond Hicks date); *Rosenbach*, 314 Md. at 476-77 (23 days after Hicks date); *Beard*, 299 Md. 472 (1984) (in three cases, delays of 10, 70, and 113 days past the respective Hicks dates); *Brookins*, 299 Md. at 60-61 (delay of 26 days past Hicks date); *Frazier*, 298 Md. at 435-45, 462 (four cases in which delay was four, 27, 29, and 86 days after the respective Hicks dates).  In *Hicks* itself, this Court reversed a dismissal of a case that occurred 40 days after the deadline for trial.

In the Circuit Court, the defense did not articulate its view on why the delay was inordinate, other than to contend that the State should have requested the DNA analysis all at once, instead of in two parts.  The Circuit Court rejected that contention, and we cannot say that the court abused its discretion in doing so.  Accordingly, Mr. Tunnell failed to

27

carry his burden of demonstrating that the length of the delay resulting from the postponement for good cause violated the Hicks rule.

The misunderstanding as to the possible effect of CJ §10-915 on the Hicks date was unfortunate and one might imagine a case in which such a misunderstanding results in a delay in a trial far beyond what could be deemed reasonable. However, that did not happen here. Trial took place only a little over a month after the Hicks date. In hindsight, it would have been preferable to set a specific trial date as part of the continuance, which would have clearly put the onus for seeking any further continuance on the parties – either the State, if further time was required in order to obtain a DNA examination and comply with the notice requirements of CJ §10-915, or the defense, if it wished to present the DNA evidence itself or had scheduling difficulties.

### III

### Conclusion

For the reasons set forth above, we hold:

(1)     The Hicks date is not automatically tolled by the length of time needed to obtain a DNA examination of evidence. Nor is the Hicks date automatically extended when a party needs a continuance of a trial date to make a timely disclosure under CJ §10-915 of DNA evidence that the party intends to introduce. However, either of those circumstances may be "good cause" for continuance under the Hicks rule – *i.e.,* CP §6-103(b) and Maryland Rule 4-271(a).

(2)     Although there was confusion in the trial court in this case as to whether a Hicks date could be "tolled," the administrative judge did not commit an error of law or

28

abuse his discretion when he found good cause for postponing the originally scheduled trial date based on the State's need to provide additional discovery to the defense. Nor was there an inordinate delay in the commencement of the trial approximately one month beyond the Hicks date, in light of the good cause finding of the administrative judge and the appearance of new defense counsel shortly before the originally scheduled trial date.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 28

September Term, 2019

_____

ANTHONY MARLIN TUNNELL

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Greene, Clayton, Jr. (Senior
Judge, Specially Assigned),

JJ.

_____

Dissenting Opinion by Watts, J.

_____

Filed: January 16, 2020

Respectfully, I dissent. I would have dismissed the writ of *certiorari* as improvidently granted and refrained from issuing an opinion in the case. From my perspective, any opinion issued by this Court is an advisory opinion as to the issue of whether DNA testing tolls the Hicks date.[1] The State, Respondent, has conceded that its argument in the Circuit Court for Worcester County—that DNA testing tolls the Hicks date—was wrong. This issue was not advanced in the Court of Special Appeals and is arguably not preserved for appellate review.

Before this Court, the State has readily acknowledged that DNA testing does not toll the Hicks date. On appeal, the Court of Special Appeals recognized that the State did not advance the argument made by the prosecutor in the circuit court that the Hicks date was tolled due to DNA testing, and the Court of Special Appeals did not address whether DNA testing may toll the Hicks date. Tunnell v. State, No. 2061, Sept. Term, 2017, 2019

---

[1]The "Hicks date" or "Hicks Rule" refer to this Court's opinion in State v. Hicks, 285 Md. 310, 318, 403 A.2d 356, 360 (1979), in which this Court held that the time limits within which a criminal trial must be held in a circuit court are mandatory and cannot be violated absent a finding of good cause. Currently, Maryland Rule 4-271 and Md. Code Ann., Crim. Proc. (2001, 2018 Repl. Vol.) § 6-103 provide that the date of a criminal trial in the circuit court shall not be later than 180 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court. Nevertheless, pursuant to both the Rule and statute, for good cause shown, the county administrative judge or the judge's designee may change the trial date in the circuit court.

Here, in the absence of tolling of the Hicks date based on the request for DNA examination—a circumstance that the parties agree did not result in tolling of the Hicks date—the only potential issue before this Court could be the consequence of the circuit court's good cause finding to allow the trial date to exceed the Hicks date. As explained below, this issue was not raised in the petition for a writ of *certiorari* and is simply not before the Court.

WL 1313412, *6 n.9 (Md. Ct. Spec. App. Mar. 22, 2019).[2]  Rather, the Court of Special

Appeals held that any issue with respect to violation of the <u>Hicks</u> date was not preserved

for appellate review because, although defense counsel "identified a possible *Hicks*

violation, [she] did not seek any relief from the court either at the August 8, 2017 hearing,

at [a] motions hearing, or at trial[,]" *i.e.*, defense counsel's "failure to move to dismiss the

charges against [Anthony Marlin Tunnell, Petitioner,] le[ft the Court] nothing to review."

<u>Id.</u> at *6 (footnote omitted).  The Court of Special Appeals nevertheless addressed the

matter on the merits and concluded that, independent of the DNA testing issue, the circuit

court did not err because the administrative judge did not abuse his discretion in

determining that good cause existed for the postponement.  <u>See</u> <u>id.</u> at *7.  Specifically, the

Court of Special Appeals explained:

> On April 7, 2017, [the administrative judge] granted a postponement of the
> trial date based upon a finding of good cause occasioned by ongoing
> discovery *and* pending DNA results.  No new trial date was scheduled at that
> time, but the original trial date was converted to a status conference.  At the
> status conference, the parties agreed to a continuation of the April 7, 2017
> indefinite postponement and again, no trial date was set.  The trial date
> ultimately was set at the August 8, 2017 hearing, which was one-week post-
> *Hicks*.  As [case law] makes clear, because the indefinite postponement
> granted on April 7, 2017 had the effect of carrying the trial date beyond the
> 180-days, it was the critical postponement. . . . [The administrative judge]
> was not obligated to personally reset or cause to be reset a particular trial

---

[2]On August 8, 2017, one week after the <u>Hicks</u> date expired, the parties appeared
before the circuit court for a status conference.  At that time, the prosecutor asked the circuit
court to have the docket entries corrected to reflect a "new Hicks date" and to determine if
a three-day jury trial could be scheduled before the new date.  The circuit court accepted
the State's position that the DNA testing tolled the <u>Hicks</u> date for forty-two days, extending
the <u>Hicks</u> date to September 12, 2017.  The circuit court also ruled that, at the April 7, 2017
hearing, the judge made a "good cause" finding and that "original finding of good cause .
. . still" stood.  Trial was scheduled for September 11, 2017, and a jury trial began on that
date.

date.  Because we discern no abuse of discretion in [the administrative judge]'s determination of good cause for that postponement, the only remaining issue would be whether the delay between that postponement and the trial date was inordinate.  And because [Tunnell] did not argue before the trial court that there had been an inordinate delay (nor does he make that argument on appeal), that issue is not before us.

Id. (cleaned up) (emphasis in original).

Thereafter, Tunnell filed in this Court a petition for a writ of *certiorari*, raising the following three issues:

> 1.      Is the 180-day deadline set forth by M[aryland] Rule 4-271 and Crim. Proc. [§] 6-103, known as the "*Hicks* Rule," "tolled" while the State awaits the results of DNA testing?
>
> 2.      Did the Court of Special Appeals err in holding that [Tunnell] was properly tried after his *Hicks* date where, a week after the expiration of [Tunnell]'s August 1, 2017 *Hicks* date, the circuit court ruled that the 180-day deadline had been "tolled" for 42 days between April 7 and May 18, 2017 while the State had awaited DNA results that it never intended to use at trial, and granted the State's request to therefore "move" [Tunnell]'s *Hicks* date from August 1 to September 12, 2017?
>
> 3.      Given that dismissal of the charges is the only remedy for a violation of the *Hicks* Rule, did the Court of Special Appeals err in holding that a *Hicks* issue was not preserved for appellate review because, although trial counsel argued *Hicks* was not complied with, she did not explicitly request that the charges against [Tunnell] therefore be dismissed?

Significantly, on July 12, 2019, this Court granted the petition, limited to the first issue only, *i.e.*, the DNA testing issue.  See Tunnell v. State, 464 Md. 589, 212 A.3d 396 (2019). The other two issues are not before this Court.

Three days later, on July 15, 2019, the State filed in this Court a "Motion to Dismiss Writ of Certiorari as Improvidently Granted," arguing that any issue as to whether DNA testing "tolled" the Hicks date was not in controversy because, as the Court of Special

Appeals noted, on appeal, the State did not raise the argument that the <u>Hicks</u> date was tolled due to outstanding DNA testing. The State also contended that any issue as to whether the <u>Hicks</u> date was violated was not preserved for appellate review because Tunnell never moved in the circuit court to dismiss the charges, either at the hearing to set the trial date or at trial. And, the State correctly asserted that the administrative judge provided "grounds for the critical postponement independent of the mistaken notion that the *Hicks* date would be 'tolled'"—namely, the need to complete discovery. Nonetheless, on July 24, 2019, this Court issued an order denying the motion to dismiss.

In its brief filed in this Court, the State renewed its argument that the writ of *certiorari* should be dismissed as having been improvidently granted. The State noted that there is "no dispute about the answer to th[e] question" of whether the <u>Hicks</u> date may be "tolled" for DNA testing because the parties agree that the circuit court erred in stating that DNA testing tolls the <u>Hicks</u> date and the State "readily acknowledged in the Court of Special Appeals that the circuit court's statement was erroneous." The State contended:

> Therefore, in order to gain a reversal of his conviction, Tunnell is asking this Court to proceed on two different questions that, in addition to not being issues on which this Court granted review, were not preserved for review below: whether the administrative judge had good cause for the critical postponement that had the effect of delaying trial past the *Hicks* date, and whether there was good cause for the length of the delay. In short, these issues are not preserved for review because Tunnell *never moved for a dismissal* of his charges in circuit court. Because the Court is prevented from reaching either of the questions Tunnell now raises, the writ of certiorari should be dismissed as improvidently granted.

(Emphasis in original). The State acknowledged that its motion to dismiss had been denied, but requested that this Court "reconsider the issue in light of the briefs." The State asserted

"that the issue of whether there was good cause for the length of delay was never raised in Tunnell's petition."

Against this backdrop, it is readily apparent that a writ of *certiorari* should not have been granted, but, given that it was, the writ should have been dismissed as having been improvidently granted. At bottom, Tunnell has alleged a violation of the <u>Hicks</u> date, with his case being tried forty-one days after the <u>Hicks</u> date. In this Court, Tunnell filed a petition for a writ of *certiorari* raising three issues related to the <u>Hicks</u> date. This Court granted *certiorari* limited to one issue only, namely, whether the <u>Hicks</u> date is "'tolled' while the State awaits the results of DNA testing[.]" The issue of whether DNA testing tolls the <u>Hicks</u> date: (1) is not in controversy in this Court, as the State has conceded that its argument in the circuit court—that DNA testing tolls the <u>Hicks</u> date—was wrong; (2) was not addressed, let alone decided, by the Court of Special Appeals; and (3) is arguably not preserved for review, as Tunnell never moved to dismiss the charges in the circuit court.

It is well settled that, "before addressing any issue raised by the parties, we must be satisfied that there is a justiciable controversy that is ripe for our consideration[,]" *i.e.*, "that there be interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." <u>Smigiel v. Franchot</u>, 410 Md. 302, 320, 978 A.2d 687, 698 (2009) (cleaned up). Here, the parties are not asserting adverse claims—both Tunnell and the State agree that DNA testing does not toll the <u>Hicks</u> date. Thus, the issue for which the writ of *certiorari* was granted is actually non-justiciable, thereby placing this Court in the position of rendering an advisory opinion. <u>See id.</u> at 320, 978 A.2d at 698 ("If this Court were to address [a non-justiciable issue], then this Court

would be placed in the position of rendering purely advisory opinions, a long forbidden practice in this State." (Cleaned up)); see also Hatt v. Anderson, 297 Md. 42, 45-46, 464 A.2d 1076, 1078 (1983) ("[T]he existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action. . . . [T]he addressing of non-justiciable issues would place courts in the position of rendering purely advisory opinions, a long forbidden practice in this State." (Cleaned up)). Because there is no longer any existing controversy between the parties as to the issue of whether DNA testing tolls the Hicks date, the case could also be said to be moot, and any opinion issued by this Court is purely advisory for that reason too. The opinion issued by this Court will simply be advisory, with the Court opining about an issue that is not in dispute. From my perspective, given the lack of controversy between the parties, that the State has acknowledged that DNA testing does not toll the Hicks date, that the issue was not decided in the Court of Special Appeals and was not the basis for affirmance of Tunnell's conviction, and given the long-standing principle that courts should not render purely advisory opinions, this Court should have dismissed the writ of *certiorari* as improvidently granted. Beyond this case, it is important for obvious reasons that this Court adhere to the principle of not issuing advisory opinions and not granting *certiorari* on issues where the parties have conceded the matter is not in dispute.

Finally, although the majority opinion spends a great deal of time discussing the matter, the issue of the administrative judge's good cause finding is not before this Court. In the circuit court, the administrative judge granted the State's initial request to postpone, finding, in relevant part, that "the need to complete discovery" was "good cause for a

continuance." Later, the circuit court ruled that the administrative judge had made a "good cause" finding and that the "original finding of good cause . . . still" stood. On appeal, addressing the merits, the Court of Special Appeals affirmed, concluding that the circuit court did not err because the administrative judge did not abuse his discretion in determining that good cause existed for the postponement. Tunnell, 2019 WL 1313412, *7. This Court granted a writ of *certiorari* only as to the issue of whether DNA testing tolls the Hicks date, and not any other issue related to the Hicks date, *i.e.*, not any issue related to the consequences of the administrative judge's good cause finding. Put plainly, any issue concerning the administrative judge's good cause finding is simply not before the Court.

In sum, this Court should have granted the State's motion to dismiss, as it is clear that *certiorari* has been improvidently granted and the opinion issued by this Court is advisory only. For the above reasons, respectfully, I dissent.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/28a19cn.pdf