MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2022 ME 10
Docket:       Was-21-86
Argued:       December 9, 2021
Decided:      February 3, 2022

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

CARINE REEVES

CONNORS, J.

[¶1]   After an eight-day jury trial, Carine Reeves was convicted of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2021).  On appeal, Reeves argues that the trial court (Washington County, *Stewart, J.*) erred in denying his motion to dismiss the indictment for failure to comply with the Interstate Compact on Detainers.  He further contends that the trial court violated his constitutional rights by holding bench conferences in the hallway and denying his mid-trial motion to represent himself.  We disagree and affirm the judgment.

## I.  FACTUAL BACKGROUND

[¶2]  Because Reeves's arguments on appeal focus only on process and procedure, our summary of the facts constituting the offense is succinct.

2

Viewing the evidence in the light most favorable to the jury's verdict, the trial record supports the following facts. *See State v. Murray*, 2021 ME 47, ¶ 2, 259 A.3d 1276. Carine Reeves trafficked drugs from New York to Maine with the aid of the victim and another associate. On July 18, 2017, Reeves, the victim, and the associate drank alcohol at a home in Machias and then left in a rental car. During the drive, Reeves became angry at the victim, struck her, pulled over, and dragged the victim out of the car. He then struck the victim in the face with his handgun, kicked her, and shot her in the head, killing her. He and his associate then made their way back to New York.

## II. PROCEDURAL HISTORY

[¶3] On July 25, 2017, the State charged Reeves by criminal complaint with intentional or knowing murder, 17-A M.R.S. § 201(1)(A), and the court (*Mallonee, J.*), issued a warrant for his arrest. A grand jury later indicted Reeves for the same offense.[1]

[¶4] Several days later, Reeves was arrested in New York. There was an outstanding New York warrant for Reeves's arrest stemming from an earlier incident in which he allegedly slashed a woman's face, and, in August 2018,

---

[1] Reeves's associate was also charged with the murder of the victim, and their cases were initially joined. At the time of Reeves's trial, the associate's murder charges were still pending, and she testified against Reeves.

Reeves was found guilty of felonious assault with intent to dismember or disable and was sentenced to twenty years' imprisonment in New York. Reeves was also convicted of assaulting a corrections officer in New York based on an incident that occurred while he was awaiting trial and was sentenced to eighteen months' imprisonment.

[¶5] In September 2018, the State of Maine lodged a detainer against Reeves, who was still incarcerated in New York. In May 2019, the State requested temporary custody of Reeves pursuant to Article IV of the Interstate Compact on Detainers (the Compact). *See* 34-A M.R.S. § 9604(1) (2021). The State took temporary custody of Reeves on January 22, 2020, which started the Compact's 120-day deadline to bring Reeves to trial. *See id.* § 9604(3). The deadline was due to expire on May 21, 2020. *See* M.R.U. Crim. P. 45.

[¶6] On January 24, 2020, Reeves was arraigned and pleaded not guilty. Trial was initially set to commence on May 18, 2020.

[¶7] Before the trial could begin, however, the COVID-19 pandemic disrupted the judicial system and daily life for the people of Maine. In light of the public health risks posed by the pandemic, the Supreme Judicial Court issued an emergency order on March 13, 2020, postponing all jury trials, as well as the vast majority of criminal matters, until May 1, 2020. *See* Emergency

4

Order and Notice from the Maine Supreme Judicial Court Courthouse Safety and Coronavirus (COVID-19) at 1-3 (Mar. 13, 2020); *see also* Revised Emergency Order and Notice from the Maine Supreme Judicial Court Courthouse Safety and Coronavirus (COVID-19) at 1-2 (Mar. 18, 2020). Subsequent orders postponed the resumption of jury trials until September 7, 2020. *See, e.g.*, PMO-SJC-1 State of Maine Judicial Branch Pandemic Management Order at 3 (revised May 28, 2020).

[¶8] On March 30, 2020, the trial court (*Stewart, J.*) issued an order noting that it was "of the view that it is not possible to assemble jurors or conduct jury trials in May." The court indicated that it was inclined to continue the trial date but gave parties until April 3, 2020, to file objections and show cause why the trial should not be continued.

[¶9] On April 3, 2020, Reeves filed a speedy trial demand as well as a motion objecting to the proposed continuance and anticipatorily moving to dismiss the indictment due to noncompliance with the Compact. *See* 34-A M.R.S. § 9604(3). Reeves argued that the trial court did not have the authority to order a continuance because good cause had not been shown in open court. *See id.* To address the issue, the court held a telephonic conference

on April 7, 2020, which was apparently not recorded and does not appear in the docket record.

[¶10]  On April 15, 2020, the court entered an order continuing the trial. The court reasoned that due to the exigencies of the COVID-19 pandemic and the Maine Supreme Judicial Court's pandemic management orders prohibiting jury trials, good cause existed to continue the trial.[2]  The court noted that the continuance was not being granted in open court, as "suggested" by the statute, but concluded that it would be contrary to the Supreme Judicial Court's orders—and a public health risk—to hold a hearing in open court.  The court tentatively scheduled the trial to begin on August 24, 2020, although the trial was later postponed until September 2020.

[¶11]   On June 8, 2020, Reeves filed a second motion to dismiss, reiterating his arguments regarding the alleged failure to comply with the Compact and noting that the 120-day period to bring him to trial had now expired.  *See id.*  After a hearing in July 2020, the court denied the motion to dismiss for the same reasons articulated in its April 2020 continuance.

---

[2]  The court considered the applicability of an exception included in the pandemic management orders, which permitted a court to hold in-person proceedings, including criminal trials, if a party demonstrated that there were "urgent and compelling reasons" to do so.  *See* Revised Emergency Order and Notice from the Maine Supreme Judicial Court Courthouse Safety and Coronavirus (COVID-19) at 2 (Mar. 18, 2020).  The court found that this exception did not apply because "there are *not* urgent and compelling reasons to schedule the [d]efendant's matter in May[] 2020."

6

[¶12] Jury selection for the trial began on September 21, 2020, and the trial began on September 24, 2020. On the first day of trial, Reeves's attorney informed the court that Reeves had requested to be present at all bench conferences. The court addressed this issue during the first bench conference, which was held in the hallway due to concerns about social distancing and COVID-19. The court ruled that although Reeves had the right to review the record, the practical concerns of allowing Reeves to be present at the bench conferences in the hallway outweighed Reeves's right to be physically present. Throughout the course of the trial, over a dozen such bench conferences were held in the hallway.

[¶13] On the fourth day of trial, the State called Reeves's associate to the stand. During cross-examination of the associate, Reeves's lead attorney declined to ask some questions suggested by Reeves. Immediately after the witness was excused, Reeves interrupted the proceedings, asking that the lead attorney be removed and the second-chair attorney be permitted to take over.

[¶14] The next day, the court held a hearing on Reeves's dispute with his lead attorney. Reeves raised several grievances about the lead attorney and again requested that the second-chair attorney take over the case or, in the alternative, that he be permitted to represent himself.

[¶15]  Applying the standard set forth in *State v. LaBare*, 637 A.2d 854, 855-56 (Me. 1994), the court found that none of the issues raised by Reeves was sufficient to justify replacing the lead attorney.[3]  The court then addressed whether Reeves could represent himself.  Citing *State v. Brown*, 676 A.2d 513 (Md. 1996), the court concluded that Reeves's right to self-representation became limited once trial had commenced.  The court made findings about the quality of the representation already provided, the reasons for Reeves's request, the potential disruptive effects on the trial, the timing of the request, the complexity of the remaining proceedings, and whether Reeves had previously sought to discharge counsel.  After weighing these factors, the trial court denied Reeves's request to represent himself.

[¶16]  After the jury found Reeves guilty of intentional or knowing murder, the trial court sentenced him to forty-eight years' imprisonment to be served concurrently with his New York sentence.  He timely appeals.[4]

---

[3]  The court also decided that replacing the lead attorney with the second-chair attorney was not feasible because the second-chair attorney was not rostered as a homicide attorney.

[4]  Reeves petitioned the Sentence Review Panel for leave to appeal his sentence, which was granted, but did not raise in his briefing any issue regarding sentencing.  Therefore, any challenge to the sentence is not preserved for our review.  *See State v. Thomes*, 1997 ME 146, ¶ 13, 697 A.2d 1262.

8

### III.  DISCUSSION

**A.  The trial court did not err in denying Reeves's motion to dismiss based on the Interstate Compact on Detainers.**

[¶17]  The Compact is a statutory alternative to extradition adopted by forty-eight states, including Maine and New York.  *See* 34-A M.R.S. §§ 9601-9636 (2021); N.Y. Crim. Proc. Law § 580.20 (Consol. through 2021 released Chs. 1-833); *State v. Beauchene*, 541 A.2d 914, 917 (Me. 1988).  It is an interstate agreement designed to facilitate the trial of defendants who are imprisoned in one jurisdiction but have charges pending against them in a different jurisdiction.  *See Beauchene*, 541 A.2d at 917; Leslie W. Abramson, *The Interstate Agreement on Detainers: Narrowing its Availability and Application*, 21 New Eng. J. Crim. & Civ. Confinement 1, 2 n.7 (1995).  Because the agreement is a congressionally sanctioned interstate compact made pursuant to the Compact Clause of the United States Constitution, art. I, § 10, cl. 3, the agreement is subject to federal construction.  *See New York v. Hill*, 528 U.S. 110, 111 (2000); *State v. Caulk*, 543 A.2d 1366, 1368 (Me. 1988).

[¶18]  Because the Compact is intended to "encourage the expeditious and orderly disposition" of charges pending in one jurisdiction against prisoners who are incarcerated in another jurisdiction, *see* 34-A M.R.S. § 9601, it sets strict deadlines.  Pursuant to Article IV, when the receiving state requests

delivery of a defendant, the trial against that defendant must begin within 120 days of the prisoner's arrival in the receiving state. *See* 34-A M.R.S. § 9604(3). If this deadline is not met, the charges against the defendant must be dismissed with prejudice.[5] *Id.* § 9605(3).

[¶19] There are two exceptions to this strict deadline. First, a court may grant "any necessary or reasonable continuance" when "good cause [is] shown in open court," provided that the prisoner or his attorney is present, *see* 34-A M.R.S. § 9604(3). Second, both deadlines are tolled "whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." *See id.* § 9606.

[¶20] We review a trial court's denial of a defendant's motion to dismiss for noncompliance with the Compact for clear error as to factual findings, de novo as to legal conclusions, and for abuse of discretion as to the ultimate decision. *See United States v. Kelley*, 402 F.3d 39, 41 (1st Cir. 2005).

---

[5] Although dismissal with prejudice is still the remedy provided in Maine, *see* 34-A M.R.S. § 9605(3) (2021), the federal version of the Compact has been amended to give federal courts discretion as to whether dismissal for noncompliance with the Compact should be with prejudice or without prejudice when the receiving jurisdiction is the federal government. *See* 18 U.S.C.S. app. 2 § 9 (LEXIS through Pub. L. 117-80); *see also United States v. Kelley*, 402 F.3d 39, 41 (1st Cir. 2005).

10

**1.  We need not decide whether the trial court's good cause continuance failed to extend the deadline because it was not granted in open court.**

[¶21]  Reeves argues that the State failed to meet the 120-day deadline because he was not brought to trial until September 24, 2020—months after the expiration of the 120-day window.  The extension granted by the trial court in April 2020, he argues, had no effect because it was not granted for good cause shown "in open court" as required by the statute.  *See* 34-A M.R.S. § 9604(3).

[¶22]  Although we have not addressed this issue previously, the case law elsewhere makes clear that if a good cause continuance is not granted after a hearing in open court, it has no effect.  *See, e.g.*, *United States v. Ford*, 550 F.2d 732, 743-44 (2d Cir. 1977).  A proceeding occurs in "open court" when it is accessible to the public and the parties and occurs on the record; it is not a requirement that the proceeding take place in a courtroom.  *See Hutchinson v. Cobb*, 2014 ME 53, ¶ 6 n.4, 90 A.3d 438.

[¶23]  Here, the continuance was granted in writing after an unrecorded telephonic hearing between the State and Reeves's legal counsel.  Such an unrecorded proceeding does not qualify as an open-court proceeding as that term is used in 34-A M.R.S. § 9604(3).

[¶24]  The trial court ruled that the hearing could not take place in open court due to the pandemic and the Supreme Judicial Court's pandemic management orders.  We need not address whether the open-court requirement may be disposed of in exigent circumstances and if so, whether such circumstances excused compliance here, however, because the State has not so argued.  Indeed, on appeal, the State has not relied on the good cause provision of the Compact to sustain the trial court's denial of Reeves's motion to dismiss.  We therefore assume for purposes of this appeal that the court's grant of a good cause continuance did not extend the 120-day period for a trial.

## 2. The deadline was tolled because Reeves was unable to stand trial.

[¶25]  Instead of relying on the trial court's good cause extension of the deadline, the State argues that the denial of Reeves's motion to dismiss the indictment should be sustained because under the Compact, the 120-day period may be tolled "whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." 34-A M.R.S. § 9606.

[¶26]  In response, Reeves contends that this tolling provision applies only when a defendant is unable to stand trial for reasons attributable to him and that, in this case, the delay was occasioned by the COVID-19 pandemic and

the pandemic management orders, not him. We have only addressed the tolling provision on two prior occasions. In both instances, we noted that a defendant is "unable to stand trial" during those periods of delay occasioned by the defendant. *See State v. Rose*, 604 A.2d 24, 25 (Me. 1992) ("For purposes of the statute, a defendant is unable to stand trial during 'all those periods of delay occasioned by the defendant.'" (citing *United States v. Taylor*, 861 F.2d 316, 321 (1st Cir. 1988)); *see also State v. Cookson*, 657 A.2d 1154, 1156 (Me. 1995).

[¶27] We have never said, however, that delays occasioned by the defendant are the *only* circumstances in which the tolling provision can apply. The plain language of the tolling provision—as well as logic—support an interpretation that the deadline is tolled when jury trials cannot be held, even if that is not the fault of the defendant. *See* 34-A M.R.S. § 9606; *United States v. Mason*, 372 F. Supp. 651, 653 (N.D. Ohio 1973) (interpreting the tolling provision to apply when a defendant is standing trial in another jurisdiction because that is "the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously"); *see also State v. Pair*, 5 A.3d 1090, 1101 (Md. 2010) ("Like the majority of our sister federal and state courts, we construe the 'unable to stand trial' language . . . to include the time during which the sending jurisdiction is

actively prosecuting the inmate on current and pending charges. This construction is consistent with a practical commonsense interpretation . . . .").

Nor is this interpretation barred by precedent[6] or the Compact's legislative history. *See generally* Council of State Gov'ts, Suggested State Legislation, Program for 1957 (1956).

[¶28] At least one other court has concluded that the Compact's tolling provision applied when a defendant could not be brought to trial due to a suspension of trials caused by the COVID-19 pandemic. *See Brown v. State*, No. CR-20-0223, 2021 Ala. Crim. App. LEXIS 73, at *8 (Ala. Crim. App. Oct. 8, 2021). Other courts have reached a similar conclusion through pandemic orders that flatly provide for tolling or similar suspensions of speedy trial deadlines. *See In re Dist. Court Operations During the Covid-19 Outbreak*, Misc. No. 2020-0001, 2020 U.S. Dist. LEXIS 56300, at *4-5 (D.V.I Mar. 17, 2020) (issuing a blanket order that defendants are "unable to stand trial" due to the

---

[6] Reeves argues that the Supreme Court foreclosed this interpretation of the tolling provision when it stated in *New York v. Hill*, 528 U.S. 110, 116 (2000), that "the 'necessary or reasonable continuance' provision is, by clear implication, the sole means by which the prosecution can obtain an extension of the time limits over the defendant's objection." This is incorrect for two reasons. First, *Hill* discusses only the circumstances under which *extensions* of time may be granted and not the circumstances under which the statutory period could be *tolled*. *See id.* Second, in *Hill,* the Supreme Court concluded that the existence of the good cause continuance provision *did not* limit the possibility of waiving speedy trial rights under the Compact. *See id.* This suggests that mechanisms of affecting the Compact's deadlines other than extensions are available notwithstanding the good cause continuance provision.

COVID-19 pandemic); *cf. State v. Lafromboise*, 959 N.W.2d 596, 601 (N.D. 2021) (concluding that a court order tolling the deadline for speedy trial proceedings applied to Compact proceedings); *In re Court Operations Under the Exigent Circumstances Created by the Covid-19 Coronavirus & Related Pandemic Precautions*, No. 2:20-mc-00080-JDL, 2020 U.S. Dist. LEXIS 158949, at *6-7 (D. Me. Mar. 18, 2020) (tolling deadlines under the Speedy Trial Act due to the COVID-19 pandemic). Even outside the context of the COVID-19 pandemic, courts have interpreted the tolling provision to apply in circumstances beyond those occasioned by the defendant. *See generally* 5 Wayne R. LaFave et al., *Criminal Procedure* § 18.4(c) (4th ed. 2015); *see also United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996) (interpreting the tolling provision to incorporate the eight exclusions in the federal Speedy Trial Act); *Young v. Mabry*, 596 F.2d 339, 343 (8th Cir. 1979) (interpreting the tolling provision to apply when the defendant is legally or administratively unavailable to stand trial).

[¶29] We, like these courts, conclude that the tolling provision applies when jury trials cannot be held due to circumstances beyond the control of either party.

[¶30]  The question still remains, however, whether the tolling provision applies in this case.  The State bears the burden of proof.  *See State v. Brown*, 953 A.2d 1174, 1177 (N.H. 2008) ("The burden of showing compliance with the [Compact] is upon the State.").

[¶31]  Under the pandemic management orders issued by the Supreme Judicial Court in response to the public health dangers posed by the COVID-19 pandemic,[7] jury trials could not be held from March 13, 2020, to September 7, 2020.  *See* Emergency Order and Notice from the Maine Supreme Judicial Court Courthouse Safety and Coronavirus (COVID-19) at 1-3 (Mar. 13, 2020); PMO-SJC-1 State of Maine Judicial Branch Pandemic Management Order at 3 (revised May 28, 2020).  The trial court expressly ascribed the delay in Reeves's case to these pandemic management orders, as well as the public health risks associated with holding a jury trial.

[¶32]  We reject Reeves's contention, made during oral argument, that the State had not met its burden of showing compliance with the Compact because Reeves had never been asked whether he would waive his right to a

---

[7] We take judicial notice of the pandemic management orders, which are matters of public record, *see D'Amato v. S.D. Warren Co.*, 2003 ME 116, ¶ 13 n.2, 832 A.2d 794, as well as the number of COVID-19 cases in the State of Maine, *see United States v. Martinez*, No. 18-CR-100 MV, 2020 U.S. Dist. LEXIS 238476, at *9 n.1 (D.N.M. Dec. 18, 2020).

jury trial. Reeves took no steps toward waiver of his jury trial right, and the State was not obligated to inquire whether he intended to do so. Similarly, although the burden remained on the State to prove why Reeves was unable to stand trial, Reeves never suggested how a trial could be held prior to September 2020 in light of the pandemic and attendant restrictions.

[¶33] Accordingly, we conclude that Reeves was unable to stand trial during the period when jury trials could not be held under the pandemic management orders: March 13, 2020, to September 7, 2020. Once these days are removed from the period between Reeves's arrival in Maine and the commencement of his trial, fewer than 120 days passed before the trial began. Consequentially, there was no violation of the Compact, and the trial court did not abuse its discretion in denying Reeves's motion to dismiss.

**B.     Reeves has failed to preserve his argument that holding bench conferences in the hallway violated his public trial rights and has failed to meet the obvious error standard.**

[¶34] On appeal, Reeves argues that the trial court's practice of holding bench conferences in the hallway was structural error because it violated his right to a public trial and the right of the public to be present at judicial proceedings. We reject this argument because Reeves has failed to show obvious error for this unpreserved issue.

[¶35]  An issue is preserved for appellate review if there is a sufficient basis in the record to alert the trial court and the opposing party to the existence of the issue.  *See Warren Constr. Grp., LLC v. Reis*, 2016 ME 11, ¶ 9, 130 A.3d 969; *Verizon New Eng., Inc. v. Pub. Utils. Comm'n*, 2005 ME 16, ¶ 15, 866 A.2d 844.  If an issue is unpreserved, we will review it only for obvious error.  *See State v. Clarke*, 1999 ME 141, ¶ 29, 738 A.2d 1233.

[¶36]  Reeves's argument about the violation of his right to a public trial is unpreserved because it was not raised before the trial court.  Although Reeves expressed that he wished to be present at bench conferences and objected to the trial court's ruling that he could not be present for such conferences, he did not argue that he had a right to be present because of his right to a public trial.  Instead, Reeves argued solely that he had a personal right to be present at bench conferences because he was the defendant.[8]  This was insufficient to alert the trial court or the State to the issue regarding Reeves's right to a public trial.

---

[8]  Reeves's argument that he had a right as the defendant to be present for all stages of the trial, including bench conferences, is waived because it is not presented in his appellate brief.  *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205.  In any event, this argument is directly contrary to our precedent.  *See State v. Fernald*, 248 A.2d 754, 758-59 (Me. 1968).

[¶37]  Under the obvious error standard, Reeves cannot succeed. Obvious error is present if an error is "plain," "affect[ed] substantial rights," and "seriously affect[ed] the fairness and integrity or public reputation of judicial proceedings." *State v. Fahnley*, 2015 ME 82, ¶ 15, 119 A.3d 727 (quotation marks omitted).  An error cannot be "plain" unless "the error is [so] clear under current law that the trial judge and prosecutor were derelict in countenancing it." *State v. Dolloff*, 2012 ME 130, ¶ 36, 58 A.3d 1032 (alteration in original) (citations and quotation marks omitted).

[¶38]  In this case, any error—if there is even error—is not "plain." Although the Sixth Amendment provides a right to a trial open to the public, *see Presley v. Georgia*, 558 U.S. 209, 212-13 (2010), there is no Maine law and scant law elsewhere supporting the proposition that barring access to bench conferences implicates the right to a public trial.  Bench conferences are similar to court recesses, during which the court may hear from the parties outside the sight and hearing of the public.  *See, e.g.*, *Evans v. State*, 2020 ME 36, ¶ 4, 228 A.3d 156.  Additionally, most other courts that have addressed the issue have concluded that brief bench conferences do not implicate the right to a public trial. *See, e.g.*, *State v. Morales*, 932 N.W.2d 106, 113-14 (N.D. 2019); *State v. Smith*, 876 N.W.2d 310, 329-30 (Minn. 2016).

[¶39]  Accordingly, Reeves has failed to meet his burden under the obvious error standard.[9]

## C.  The trial court did not err or abuse its discretion when it denied Reeves's mid-trial request to represent himself.

[¶40]  Finally, Reeves argues that the trial court violated his right to self-representation under the Maine Constitution and the U.S. Constitution when it denied his mid-trial request to represent himself.  The State counters that Reeves's self-representation right was limited because he asserted the right only after previously waiving that right and proceeding to trial with the aid of counsel.

[¶41]  Under our primacy approach, we first examine the defendant's claim under the Maine Constitution and interpret the Maine Constitution independently of the federal Constitution.  *See State v. Fleming*, 2020 ME 120, ¶ 17 n.9, 239 A.3d 648.  In interpreting the Maine Constitution, however, we may consider federal precedent to the extent that we find that precedent persuasive.  *See Fleming*, 2020 ME 120, ¶ 17 n.9, 239 A.3d 648.[10]

---

9  The authority identified by Reeves in support of his argument—a dissent from a denial of certiorari authored by a single U.S. Supreme Court Justice, *see Smith v. Titus*, 141 S. Ct. 982, 985-87 (2021) (Sotomayor, J., dissenting from denial of cert.)—is insufficient to show obvious error.

10  The State argues, with little elaboration, that the rights guaranteed by the Maine Constitution and the federal Constitution are coextensive.  The language in the Maine Constitution differs from the language in the federal Constitution, *compare* Me. Const. art. I, § 6, *with* U.S. Const. amend. VI, and we

[¶42]  We review questions of constitutional interpretation de novo.  *See Bouchard v. Dep't of Pub. Safety*, 2015 ME 50, ¶ 8, 115 A.3d 92.

[¶43]  When interpreting the Maine Constitution, "we look primarily to the language used." *Allen v. Quinn*, 459 A.2d 1098, 1100 (Me. 1983) (quotation marks omitted).  Article I, § 6, of the Maine Constitution provides that "[i]n all criminal prosecutions, the accused shall have a right to be heard by the accused and counsel to the accused, or either, at the election of the accused."  This provision unambiguously confers a right to self-representation.  *See State v. Tomah*, 560 A.2d 575, 575 (Me. 1989); *State v. Walls*, 501 A.2d 803, 805 (Me. 1985).  But it does not explicitly address how that right operates when there has been an initial waiver of the right to self-representation followed by a later, mid-trial invocation of that right.  Our precedents also provide little guidance on this issue.

[¶44]  The analogous federal provision is the Sixth Amendment, which contains an implicit right to self-representation.  *See* U.S. Const. amend. VI; *Faretta v. California*, 422 U.S. 806, 819 (1975).  This right, however, is subject to limitations.  *See Martinez v. Ct. of Appeal of Cal., 4th App. Dist.*, 528 U.S. 152,

---

have never addressed whether this particular right as applied in this context is coextensive under both constitutions.

161 (2000); *see also Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008). One such limitation is that a trial judge has broad discretion to deny a request for self-representation if it is asserted in an untimely[11] fashion, such as when a defendant initially waives his right to represent himself but later asserts it after the beginning of trial. *See United States v. Noah*, 130 F.3d 490, 497-98 (1st Cir. 1997); *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997); *see also* 3 LaFave et al., *Criminal Procedure* § 11.5(d) (4th ed. 2015). Other state courts agree. *See, e.g.*, *State v. Hightower*, 393 P.3d 224, 228-29 (Or. 2017); *Brown*, 676 A.2d at 521. This limitation is imposed because of the disruptive effects of a defendant switching to self-representation in the middle of a trial. *See Noah*, 130 F.3d at 498; *United States v. Dunlap*, 577 F.2d 867, 868 (4th Cir. 1978).

[¶45]  A number of factors guide the discretion of trial courts in other jurisdictions, although the precise articulation of these factors varies. Some courts consider the reason for the request, the quality of the attorney's representation, and a party's proclivity to substitute attorneys. *See Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976). Others consider the disruption to

---

[11] One area of disagreement is the precise moment when assertion of the right becomes untimely. *Compare Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir. 1982) (after empanelment of the jury), *with United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979) (after "meaningful trial proceedings have commenced"). Reeves's request, which occurred, at the earliest, at the end of the fourth day of trial, was untimely by any metric.

the proceedings, inconvenience and delay, and potential confusion of the jury. *See Fulford v. Maggio*, 692 F.2d 354, 362 (5th Cir. 1982), *rev'd on other grounds* 462 U.S. 111, 118 (1983); *United States v. Lawrence*, 605 F.2d 1321, 1324 (4th Cir. 1979). Still other courts apply a combination of these factors. *See United States v. Mayes*, 917 F.2d 457, 462 (10th Cir. 1990); *Brown*, 676 A.2d at 525.

[¶46] We find these decisions persuasive and conclude that the right to self-representation under Article I, § 6, of the Maine Constitution becomes limited after the commencement of trial. Once a defendant has waived his self-representation right by proceeding to trial with the aid of counsel, the trial court has broad discretion to deny a later request to represent himself. The trial court's denial of such an untimely request is reviewed for abuse of discretion. *Accord Noah*, 130 F.3d at 498; *Fulford*, 692 F.2d at 362.

[¶47] Under the facts of this case, the trial court did not abuse its discretion by refusing to allow Reeves to represent himself. Reeves waived his right to self-representation by proceeding to trial with the aid of counsel and did not assert that right until well after trial began. In denying Reeves's request to represent himself, the trial court made findings supported by the record on six factors: the reasons given for the request, the quality of the representation

already provided, the potential disruptive effects on the trial, the timing of the request, the complexity of the proceedings that remained, and whether there had been any prior requests to discharge his counsel. Although this is not an exhaustive list of potentially relevant factors, we conclude that these considerations appropriately reflect the trial court's interest in judicial efficiency and integrity, and in avoiding disruption of the trial.[12]

[¶48] Therefore, Reeves's rights under the Maine Constitution were not violated and, for the same reasons, the denial of Reeves's tardy request to represent himself comported with the federal Constitution.[13] *See Noah*, 130 F.3d at 498-99.

The entry is:

Judgment affirmed.

---

[12] Reeves's contention that the trial court inappropriately considered the prejudice to him of representing himself is unavailing. The trial court explicitly balanced "the right to represent oneself versus the overall judicial efficiency and having a trial proceed in an orderly fashion." Many of the court's considerations, such as its finding that Reeves would have difficulty questioning expert witnesses or its finding that the trial would be disrupted, appear to be related to concerns about trial efficiency as much, if not more, than about prejudice to Reeves.

[13] Reeves also argues that the trial court violated his rights under 4 M.R.S. § 860 (2021) when it denied his request to represent himself. Reviewing this question of statutory interpretation de novo, *see State v. Blum*, 2018 ME 78, ¶ 8, 187 A.3d 556, we conclude that this statute provides no right beyond those granted by the Maine Constitution. Section 860—which is found in a subchapter about attorney conduct, requirements, and responsibilities—does no more than prescribe administrative procedures for proceeding in court with or without the aid of an attorney. *See State v. Crafts*, 425 A.2d 194, 196 (Me. 1981) (noting that the self-representation right is "also implemented by statute").

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Carine Reeves

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Washington County Unified Criminal Docket docket number CR-2017-325
FOR CLERK REFERENCE ONLY