*Michael Herman Timberlake v. State of Maryland*, No. 585, September Term 2022. Opinion by Wells, C. J.

**CRIMINAL PROCEDURE – INTERSTATE AGREEMENT ON DETAINERS ACT (IADA) – CHIEF JUDGE'S ADMINISTRATIVE ORDERS DURING THE PANDEMIC – 180-DAY RULE UNDER THE IADA**

For a criminal defendant detained and brought to Maryland under the Interstate Agreement on Detainers Act (IADA), the 180-day clock under which the defendant must be tried was tolled by the Chief Judge of the Court of Appeals' Administrative Orders closing Maryland's courts due to the COVID-19 pandemic. In this case, Timberlake was functionally "unable to stand trial" under Maryland Code, Correctional Services Article ("CS"), § 8-408 due to the circuit court's closure by administrative order during the pandemic. Further, CS § 8-804 does not require the court make an explicit on-the-record finding that a defendant is unable to stand trial.

**CRIMINAL PROCEDURE – SPEEDY TRIAL – *HICKS*' 180-DAY RULE UNDER MARYLAND RULE 4-271 AND CRIMINAL PROCEDURE § 6-103 – CRITICAL DAY THAT SETS A DEFENDANT'S TRIAL BEYOND THE 180-DAY LIMIT**

A circuit court may "correct" the erroneous setting of a defendant's criminal trial beyond the *Hicks* date at any time before or on the 180th day. Here, a judge, who had no administrative authority, rescheduled Timberlake's trial date beyond the *Hicks* date. Before the 180th day, the administrative judge found good cause to move the trial to the newly scheduled date, despite Timberlake arguing that "the damage was done" when the previous judge set trial beyond *Hicks*. Further, in this case, the administrative judge offered to set the trial before the 180th day, but Timberlake declined to do so, thereby consenting to a trial date beyond *Hicks*.

Circuit Court for Howard County
Case No. C-13-CR-19-000777

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 585

September Term, 2022

_____

MICHAEL HERMAN TIMBERLAKE

v.

STATE OF MARYLAND
_____

Wells, C.J.,
Graeff,
Nazarian,

JJ.
_____

Opinion by Wells, C.J.
_____

Filed: February 2, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

In 2019, Michael Timberlake, appellant, and at the time a federal prisoner, sought to be tried on outstanding charges in Maryland. Timberlake was to be tried in the Circuit Court for Howard County, but his trial was delayed numerous times—most significantly, due to court closures ordered by the Honorable Mary Ellen Barbera, at the time, the Chief Judge of the Court of Appeals of Maryland (now called the Supreme Court of Maryland[1]) during the COVID-19 pandemic. In fall 2020, several months prior to Timberlake's rescheduled trial date in February 2021, but nearly a year after he had been brought to Maryland, Timberlake moved to dismiss on two grounds related to the trial delay. The circuit court denied the motion to dismiss, and Timberlake filed this timely appeal. He submits two questions for our review:

1. Did the circuit court err in denying appellant's motion to dismiss for failure to comply with the time limits for prosecution set forth in the Interstate Agreement on Detainers Act?

2. Did the circuit court err in denying appellant's motion to dismiss for failure to comply with the time limits for prosecution set forth in Maryland Rule 4-271, Criminal Procedure Article, § 6-103 and *State v. Hicks*, 285 Md. 310, 403 A.3d 356 (1979)?

For the reasons that follow, we answer "no" to both and affirm.

---

[1] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022. *See*, *also*, Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute, ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland…."). The Judges of the Court are now called "Justices."

**FACTUAL AND PROCEDURAL BACKGROUND**

The issues raised in this appeal do not require a detailed recitation of the facts that led to Timberlake's first-degree burglary charge, nor the evidence introduced at trial that led to his conviction. Therefore, we discuss only the relevant events that occurred after Timberlake was first served with a warrant, through the circuit court's denial of his two motions to dismiss.

In 2019, Timberlake, who was then detained at Federal Correctional Institution, Ray Brook, New York, for a violation of a District of Columbia probation, was served with a warrant relating to a burglary in Howard County. In October 2019, Timberlake mailed to the Office of the Howard County State's Attorney his request to be tried on outstanding charges pursuant to the Interstate Agreement on Detainers Act (IADA), by way of sections 8-405(a) and 8-416 of the Correctional Services Article ("CS") of the Maryland Code.[2] The State's Attorney's office received Timberlake's letter on October 16, 2019. It is undisputed that under the IADA, trial needed to commence within 180 days of that time: on or before April 13, 2020.

On November 22, 2019, Timberlake was transferred to State custody. On December 9, 2019, defense counsel entered their appearance on Timberlake's behalf. It is also undisputed that trial needed to commence within 180 days of that time pursuant to Maryland Rule 4-271 and section 6-103 of the Criminal Procedure Article ("CP") of the

---

[2] The specifics of the IADA and Maryland's adoption and codification of the Act will be discussed in more detail in our analysis below.

Maryland Code (and *State v. Hicks*, 285 Md. 310 (1979))[3]: on or before June 8, 2020.

The court scheduled a motions hearing for March 17, 2020 and a trial for March 25-26, 2020. However, on March 16, 2020, due to the COVID-19 pandemic, Chief Judge Barbera issued an administrative order closing all courts.[4] Notably, that order contained the following text:

> Pursuant to Maryland Rule 16-1003(a)(7), statutory and rules deadlines related to the adjudication of criminal and juvenile matters shall be suspended and shall be extended by the number of days that the courts are closed by order of the Chief Judge of the Court of Appeals, but no fewer than twenty-one (21) business days after the first day that the courts have been reopened[.]

The next day, the Clerk of the Circuit Court for Howard County issued a notice indicating Timberlake's trial was rescheduled for April 6, 2020.

However, on March 30, 2020, the circuit court, without a hearing, issued a notice cancelling the April 6 trial date and scheduling a motions hearing on June 18, 2020—thereby postponing trial until after the expiration of the original IADA and *Hicks* deadlines. Timberlake's federal sentence expired on April 23, 2020, so he remained in State custody solely because of the burglary case.

On June 9, 2020, the circuit court cancelled the June 18, 2020 motions hearing and scheduled a plea hearing for July 31, 2020. Timberlake was ultimately granted a

---

[3] This rule, statute, and the *Hicks* case which explains them will also be discussed in more detail.

[4] Administrative Order on Statewide Judiciary Restricted Operations Due to the COVID-19 Emergency (March 16, 2020), available at https://mdcourts.gov/coronavirusorders (See list of Obsolete/Rescinded Orders).

postponement of the July 31 plea hearing so that the matter could be set for an in-person hearing and plea on September 11, 2020.

In the meantime, on August 12, 2020 Timberlake filed a motion to dismiss for violation of the IADA, arguing that Chief Judge Barbera's orders suspending criminal trials did not obviate the need for the State to bring Timberlake to trial within the original 180 days under the IADA, on grounds that the "head of the judicial branch in Maryland possesses no authority to suspend the operation of laws passed by the legislature," such as the 180-day deadline imposed by the IADA.

The previously scheduled September 11 in-person plea hearing commenced before a judge who was not the circuit court administrative judge. Because Timberlake was now moving to dismiss based on an alleged violation of the IADA deadline, the judge postponed the plea hearing and set a hearing on Timberlake's motion to dismiss for September 16. Critical to Timberlake's argument, the same judge also set a motions hearing for January 7, 2021 and a new trial date of February 1-2, 2021.

At the September 16 hearing, the court denied Timberlake's motion to dismiss for violation of the IADA, reasoning that although Timberlake was correct that no good cause finding had been made thus far, Chief Judge Barbera's administrative orders for COVID-19 closures properly tolled the 180-day clock for Timberlake, as Chief Judge Barbera had authority over the circuit court, and the pandemic provided reasonable grounds for the closures. Pursuant to those closures, the judge found Timberlake's IADA clock would

4

resume on November 4th, at which point 28 of his 180 days would remain. The judge set a status hearing for September 22 before the administrative judge, Judge Tucker.

At the September 22 hearing, Timberlake argued his right to be tried within 180 days of defense counsel's first appearance, pursuant to Rule 4-271, CP § 6-103, and *Hicks*, had been violated. The court noted that although the original *Hicks* date pursuant to the rule and statute had been June 6, 2020, the new deadline, when adjusted for tolling due to Chief Judge Barbera's administrative orders, was January 29, 2021. Timberlake's argument was that a good-cause finding should have been made on September 11, because that was the day the trial was postponed to February 1-2, 2021, a few days beyond the (new) *Hicks* date of January 29, 2021. Judge Tucker disagreed with Timberlake, concluding that it was permissible for the court to make a good cause finding up until the *Hicks* date. Accordingly, Judge Tucker found good cause to go beyond the *Hicks* date based on the COVID-19 closures and denied Timberlake's motion to dismiss. Notably, Judge Tucker also offered to move the trial to a date before January 29, but Timberlake and the State declined the offer, maintaining that the February 1 trial date was acceptable.

On April 8, 2022, the parties proceeded by way of a Not Guilty Agreed Statement of Facts so that Timberlake's right to appeal the denials of his motions to dismiss was preserved. The court found Timberlake guilty of first-degree burglary and sentenced him to fifteen years with all but four years suspended and gave credit for 1,038 days of pretrial incarceration. Timberlake timely appealed the denials of his two motions to dismiss.

**DISCUSSION**

## I.   Interstate Agreement on Detainers Act

### A.  Parties' Contentions

Timberlake contends the circuit court erred in denying his motion to dismiss the case for violation of the IADA, because the circuit court did not make a finding of good cause on March 30, 2020, as required by CS § 8-405(a) for delaying Timberlake's trial beyond the 180-day mark of April 13, 2020. Timberlake argues, although not as expressly on appeal as before the circuit court, that former Chief Judge Barbera did not have the authority to toll a prisoner's IADA clock. We glean this argument both from his express argument below, and his argument to this Court that the circuit court was required to make its own on-the-record good cause finding justifying the continuance, despite his concession (both in his brief and at oral argument) that Chief Judge Barbera's administrative orders closing the courts due to the COVID-19 pandemic would have been a sufficient basis for a good cause finding by the circuit court. Timberlake further argues that CS § 8-408 did not absolve the court from the good cause requirement, because Timberlake "at all times, was ready to stand trial"—and regardless, the court would have needed to make a finding that Timberlake was unable to stand trial before postponing trial beyond the 180-day mark.

The State counters that the circuit court properly denied the motion, as the 180-day period was tolled during the COVID-related court closures under Chief Judge Barbera's administrative orders, since even a "legal or administrative unavailability" will constitute Timberlake being "unable to stand trial" under CS § 8-408(a). The State points out that

6

other jurisdictions—the Supreme Courts of Alabama and Maine—have rejected claims that COVID-related court shutdowns do not toll the IADA clock. [5]

## B. Standard of Review

Timberlake states that he has "not uncovered a Maryland case that explicitly sets out the standard of review for this issue but urges this Court to adopt the [] standard of review discussed in *United States v. Kelley*, 402 F.3d 39, 41 (1st Cir. 2005)." There, the First Circuit adopted the review employed for analogous cases under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174: the trial court's rulings of law are reviewed de novo, its factual findings are reviewed for clear error, and its ultimate ruling is reviewed for an abuse of discretion. The State, in its brief, says it does not dispute that this standard of review is appropriate. We too find it appropriate.

## C. Analysis

Just as the parties focus their arguments on the applicability of the "unable to stand trial" provision of CS § 8-408, we will determine whether the circuit court's denial of Timberlake's motion to dismiss was legally correct on this ground. First, we will determine whether Timberlake was "unable to stand trial" within the meaning of CS § 8-408.

---

[5] The State notes that it does not disavow its argument below that Timberlake's right to be tried within the IADA time limit expired when he finished serving his federal sentence on April 24, 2020. Indeed, the circuit court also found that because Timberlake's federal sentence expired on April 24, 2020, Timberlake was no longer entitled to the "protections" of the IADA, pursuant to *State v. Holley*, 82 Md. App. 381 (1990). However, the State says this Court need not reach that argument in light of the Chief Judge's authority to have tolled Timberlake's IADA clock. Timberlake rebuffs that position by saying that his argument for a violation of IADA relates to the time up to and after his IADA deadline of April 13, 2020 through the expiration of his federal sentence on April 24, 2020—not after that.

7

Timberlake argues that because he was able to stand trial, only CS § 8-405(a) (and not CS § 8-408) applies. So, he argues, the circuit court was required to make a good cause finding in open court for the continuance, which it did not do. Consequently, if we conclude that Timberlake was, in fact, unable to stand trial, our inquiry will end there. If we instead conclude that Timberlake was not "unable to stand trial" such that § 8-408 does not apply, we will then analyze whether the absence of an open-court good cause finding by the circuit court in this case amounts to a violation of the IADA.

### *Legal Background*

"The IAD is a congressionally-sanctioned compact among the states designed to facilitate the prompt disposition of a detainer lodged by one state against a person incarcerated in another state. In particular, the IAD[A] allows for the temporary transfer of the prisoner from the state of incarceration to the state in which charges are pending, upon the request of either the prisoner or the prosecuting jurisdiction." *Aleman v. State*, 469 Md. 397, 402 (2020).[6] Maryland became a party to the compact in 1965. Chapter 627, § 1, Laws of Maryland 1965. The IADA is now codified as Maryland Code, Correctional Services Article ("CS"), § 8-401 *et seq*.

Two provisions of this code are pertinent in this case. Section 8-405(a) provides, in relevant part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party

---

[6] We forego an in-depth discussion of the history of the IADA, as our Supreme Court very recently provided such a review in *Aleman v. State*, 469 Md. 397, 403–09, *cert. denied*, 208 L. Ed. 2d 278, 141 S. Ct. 671 (2020).

state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint; **provided that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.**

(Emphasis added). And section CS § 8-408(a) specifies, in relevant part:

In determining the duration and expiration date[] of the time period[] provided in §[] 8-405 . . . the running of [this] time period[] shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

### *Timberlake was "unable to stand trial" under CS § 8-408 due to the COVID-related court closures*

In the only Maryland appellate decision interpreting the "unable to stand trial" phrase in CS § 8-408, the Supreme Court of Maryland, in *State v. Pair*, addressed whether a prisoner was "unable to stand trial" when Delaware refused to send him to Maryland for trial before disposition of the Delaware charges. 416 Md. 157, 172–73 (2010). The Court observed that although it could find no appellate decisions construing the phrase, it did "not write on a clean slate," instead finding that, with the exception of the Fifth Circuit, all federal and state courts that had addressed the issue had concluded a prisoner was "'unable to stand trial' on the charges underlying the detainer whenever such unavailability can be attributed to 'legal' or 'administrative' reasons[.]" *Id.* at 173. The Court concluded that

9

"the pendency of charges in the sending jurisdiction" constituted such a legal or administrative unavailability. *Id.*

We have little trouble concluding that the COVID-related court closures ordered by Chief Judge Barbera constitute another example of administrative unavailability under § 8-408.[7] Although it is true that "the prisoner, who is to benefit by [IADA], is not to be held accountable for official administrative errors which deprive him of that benefit," *Pair*, 416 Md. at 177 (quoting *Pittman v. State*, 301 A.2d 509, 514 (Del. 1973)), the court closures at hand were not administrative errors. Just as in *Pair*, where Delaware's refusal to send the prisoner to Maryland was no fault of the prisoner, a legal or administrative unavailability need not be caused by the prisoner in order to trigger the "unable to stand trial" provision of § 8-408. Timberlake was unable to stand trial, so § 8-408 was applicable.

Additionally, we conclude that the circuit court need not have made a finding on the record using the exact words of CS § 8-408 in order for Timberlake's IADA clock to have been tolled by the COVID-19 closures. The circuit court's determination that Timberlake was administratively unavailable to stand trial due to the court closures during a world-wide pandemic was implicit. Accordingly, we hold that the IADA was not violated by the continuance of Timberlake's trial beyond the original IADA deadline of April 13, 2020 because of the complete closure of all courts pursuant to Chief Judge Barbera's

---

[7] As the State points out, the Supreme Courts of Alabama and Maine reached the same conclusion when faced with this issue. *Ex parte Brown*, No. 1210172, 2022 WL 2188197, at *2 (Ala. June 17, 2022); *State v. Reeves*, 268 A.3d 281, 289 (Me. 2022).

10

administrative orders. We, therefore, affirm the circuit court's denial of his motion to dismiss.

## II. Maryland Rule 4-271, Criminal Procedure § 6-103 ("*Hicks*")

### A. Parties' Contentions

Timberlake contends the circuit court erred in denying his motion to dismiss for a violation of Maryland Rule 4-271 and § 6-103 of the Criminal Procedure Article ("CP") of the Maryland Code (together often referred to simply as "*Hicks*"[8]) because on September 11, 2020, when the court postponed his trial date beyond the adjusted *Hicks* deadline of January 29, 2021,[9] the postponement was not ordered by an administrative judge, nor was a good cause finding made. Timberlake contends that when the administrative judge made a good cause finding on September 22 to justify the continuance, it did not remedy the violation because, as Timberlake sees it, "the damage was done" with the September 11 postponement which was not made by the administrative judge. The State counters that a good cause finding can be made at any time before the expiration of the 180 days, and so the administrative judge's good cause finding on September 22 was sufficient for the continuance of the trial beyond January 29, 2021—the adjusted *Hicks* date due to the

---

[8] See footnote 10.

[9] Timberlake does not argue that Chief Judge Barbera did not have the authority to toll the *Hicks* clock as he did regarding the IADA clock. Below, and in his appeal to this Court, Timberlake appears to accept that his 180-day period for purposes of Rule 4-271 and *Hicks* was tolled by the Chief Judge's administrative orders closing courts. *See Murphy v. Liberty Mutual*, 478 Md. 333, 376 (2022) (holding the Chief Judge acted within her authority when she issued an administrative order temporarily tolling statutes of limitations under Maryland law for civil actions during the COVID-19 pandemic).

COVID-19 pandemic. The State adds that Timberlake's argument, that the unsanctioned setting of a trial date beyond *Hicks* is, essentially, irreparable, runs counter to the purpose of the rule, namely ensuring the efficient operation of courts. In the State's view, the inability of a court to correct a *Hicks* violation before the 180-day deadline "would make it impossible for a circuit court ever to recover from a postponement by the wrong judge, or the right judge who might accidentally overlook the 'good cause' finding…."

### B. Standard of Review

"An administrative judge's determination that there is good cause for a continuance [of a trial past the *Hicks* date] is 'a discretionary matter, rarely subject to reversal upon review.'" *Tunnell v. State*, 466 Md. 565, 589 (2020) (quoting *State v. Frazier,* 298 Md. 422, 451 (1984)). "The defendant must show an abuse of discretion or a lack of good cause as a matter of law." *Id.* (citing *State v. Fisher*, 353 Md. 297, 307 (1999)). "The critical determination for appellate review is the postponement that extends the trial date beyond the Hicks date, whether or not the administrative judge was precisely aware of the relation of postponement to the *Hicks* date at the time that judge granted the continuance." *Id.* (citing *Fisher*, 353 Md. at 305-6; *Goins v. State*, 293 Md. 97, 111-12 (1982)).

### C. Analysis

*Legal Background*

The "*Hicks* Rule"[10] refers to the requirement that "[a] criminal trial in a Maryland circuit court must begin within 180 days of certain triggering events." *Tunnell*, 466 Md. at 570. The current statute[11] setting forth this rule, CP § 6-103, provides:

> (a)(1) The date for trial of a criminal matter in the circuit court shall be set within 30 days after the earlier of:
>     (i) the appearance of counsel; or
>     (ii) the first appearance of the defendant before the circuit court, as provided in the Maryland Rules.
> (2) The trial date may not be later than 180 days after the earlier of those events.
>
> (b)(1) For good cause shown, the county administrative judge or a designee of the judge may grant a change of the trial date in a circuit court:
>     (i) on motion of a party; or
>     (ii) on the initiative of the circuit court.
> (2) If a circuit court trial date is changed under paragraph (1) of this subsection, any subsequent changes of the trial date may only be made by the county administrative judge or that judge's designee for good cause shown.

---

[10] "In a 1979 decision involving prior versions of the statute and rule, [the Supreme Court of Maryland] held that compliance with the deadline in the rule was mandatory and that any postponement beyond that deadline must be authorized by the administrative judge for the requisite cause. *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356 (1979), *on motion for reconsideration*, 285 Md. at 334, 403 A.2d 356 (1979). The [c]ourt held that a failure to commence a trial in accordance with this timeline necessitates dismissal of the charges with prejudice. *Id.* The requirements established by the statute and rule are often referred to colloquially as the 'Hicks rule' and the deadline for commencing trial under those provisions as the 'Hicks date.'" *Tunnell v. State*, 466 Md. 565, 571 (2020).

[11] "The statute was enacted in 1971 and codified as Maryland Code, Article 27, § 591. Chapter 212, Laws of Maryland 1971. In its original form, the statute set the deadline for trial at 'six months' after a triggering event. The statute was later amended to replace that time frame with the roughly equivalent "180 days," a specification perhaps more amenable to precise computations. Chapter 378, Laws of Maryland 1980. As part of code revision, the statute was recodified as amended, without substantive change, as part of the then new Criminal Procedure Article in 2001. Chapter 10, § 2, Laws of Maryland 2001." *Tunnel*, 466 Md. at 571 n.2.

(c) The [Supreme Court of Maryland] may adopt additional rules to carry out this section.

Md. Code Ann., Crim. Proc. § 6-103. Maryland Rule 4-271 is the corresponding rule.

Rule 4-271(a)(1) reads, in relevant part:

> The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4-213, and shall be not later than 180 days after the earlier of those events.
> …
> On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date.

Our Supreme Court recently explained that "the Hicks rule was intended primarily to carry out the public policy favoring the prompt disposition of criminal cases." *Tunnell*, 466 Md. at 571–72. The Court referred to the *Hicks* decision, noting

> [T]he Court observed that postponement of criminal trials resulted in trial courts and court-supporting agencies "spinning their wheels," wasted time of attorneys and witnesses, and frustrated other persons involved in the system, all of which impaired public confidence in the courts. [*Hicks*, 285 Md. at 316-17]. The Court was careful to distinguish this rationale from a defendant's constitutional right to a speedy trial, stating that the court rule "stands on a different legal footing" from the constitutional speedy trial requirement. *Id*. at 320.

*Tunnel*, 466 Md. at 585.

Timberlake's argument that the only 'proceeding' we can consider for purposes of determining whether a *Hicks* violation occurred is September 11, the date that the court set Timberlake's trial beyond *Hicks*, hinges on his interpretation of: (1) our Supreme Court's statement that "[t]he critical determination for appellate review is the postponement that extends the trial date beyond the *Hicks* date," *Tunnel*, 466 Md. at 589 (citations omitted),

14

and (2) the requirement in the statute and rule that only an administrative judge or his or her designee can postpone a trial beyond the *Hicks* date. CP § 6-103(b)(1); Rule 4-271(a)(1).

Addressing the more straightforward of the two premises first, decisions from our appellate courts have made clear that only an administrative judge or his or her designee can postpone a case beyond its *Hicks* date. *E.g., Goldring v. State*, 358 Md. 490, 502–03 (2000) ("we have applied the dismissal sanction, without regard to the merits of the good cause determination, where the postponement that took the case beyond the prescribed 180 day limit was not authorized by the administrative judge or the administrative judge's designee."); *Capers v. State*, 317 Md. 513, 520–21 (1989) (dismissing charges where the postponement was granted by the assignment officer, having concluded that "[t]he statute and rule do not contemplate or permit the exercise of postponement authority by anyone other than one with the authority of an administrative judge."); *Calhoun v. State*, 299 Md. 1, 8–9 (1984) ("by enacting [the statute], 'the Legislature ... has denied all judges but the administrative head of the court authority to exercise ... [the postponement] power'") (quoting *Guarnera v. State*, 20 Md. App. 562, 573, *cert. denied*, 272 Md. 742 (1974)); *Frazier*, 298 Md. at 453 ("[t]he major safeguard contemplated by the statute and rule, for assuring that criminal trials are not needlessly postponed beyond the 180-day period, is the requirement that the administrative judge or his designee, rather than any judge, order the postponement.").

Assuming then that it was error on September 11, 2020 for the non-administrative judge to move the trial date beyond *Hicks*, we must determine whether Administrative

15

Judge Tucker's finding of good cause for postponing Timberlake's trial beyond the *Hicks* date, made eleven days later on September 22—a date still before the *Hicks* date of January 29, 2021—can remedy that error, or if instead, we cannot consider any actions relating to the postponement except September 11.

### *Timberlake's Motion to Dismiss was Premature*

We find the early case of *State v. Frazier*, 298 Md. 422 (1984) helpful. There, the Supreme Court of Maryland explained:

> [W]e made it clear in *Hicks* that the purpose of [the statute] and [the rule] was to set a time limit for the trial of a criminal case, that the dismissal sanction was applicable *when the case was not tried within that time limit* **and** not postponed in accordance with [the statute] and [the rule], but that the dismissal sanction was inapplicable to violations of [the statute] and [the rule] which did not prevent the case from being tried within the prescribed time period. [*Hicks*,] 285 Md. at 318, 320, 334, 335. Thus, when there are several orders by the administrative judge postponing a criminal trial, and one of those orders has the effect of postponing the trial beyond the 180-day deadline, it is the latter order with which a judge hearing a motion to dismiss is concerned. The critical order by the administrative judge, for purposes of the dismissal sanction, is the order having the effect of extending the trial date beyond 180 days.

*Id.* at 428 (emphasis added). Critically, we note that according to *Frazier*, for the dismissal sanction to apply, two conditions must be met: (1) the postponement is not made in accordance with Rule 4-271 and CP § 6-103, and (2) the 180-day period has expired without trial. Similarly, this Court has observed a previous holding of our Supreme Court,

> that, *once the 180-day period has expired*, a trial judge ruling on a motion to dismiss or an appellate court cannot make a de novo determination of good cause for a postponement and excuse the State's noncompliance with [the statute] and [the rule].

16

*Franklin v. State*, 114 Md. App. 530, 537 (1997) (citing *Calhoun v. State,* 299 Md. 1, 7–8 (1984)) (emphasis added). *See Goldring v. State*, 358 Md. 490, 502–03 (2000) ("As has been stated time and time again, it is a violation of [the statute] and Rule 4–271, for which dismissal is the appropriate sanction, for a Circuit Court case *to be tried* more than 180 days after the earlier of the arraignment of the defendant or the appearance of defense counsel, *when* the postponement resulting in the trial date beyond the 180 day limit has not been granted by the administrative judge or his designee to be for good cause.") (emphasis added). In short, dismissal for a *Hicks* violation is, at a minimum, not mandatory where the 180-day period has not yet expired.

At the time of Timberlake's motion to dismiss—September 22, 2020—the 180-day time period had not run out (nor was it approaching expiration), so the second condition for a *Hicks* violation was not satisfied. There was still time for the administrative judge to make a good cause finding justifying postponement beyond the 180 days, or, to move the trial to within the 180 days if he found good cause to be lacking. We have found no cases and Timberlake points us to none where our appellate courts have affirmed the grant of a motion to dismiss based on *Hicks* made *before* the expiration of the 180-day period. In fact, in each of the cases we have reviewed dealing with motions to dismiss for alleged *Hicks* violations, the motion to dismiss (successful or otherwise) was made *after* the expiration of 180 days.[12] Additionally, language from *Tunnel*—although admittedly dicta—similarly

---

[12] *E.g.*, *Peters v. State*, 224 Md. App. 306 (2015) (*Hicks* date September 24, 2012; motion to dismiss November 27, 2012); *Franklin*, 114 Md. App. at 533 (trial initially set after expiration of 180 days; motion to dismiss on day of trial); *Rosenbach v. State*, 314

implies that the *Hicks* dismissal sanction is inapplicable where the 180-day period has not yet expired.[13] We conclude that the September 22 hearing was premature for a motion to dismiss based on an alleged violation of *Hicks*.

### *The September 22 hearing took Timberlake's trial past the* Hicks *date*

Assuming then that Timberlake had moved to dismiss based on *Hicks* after the expiration of 180 days (when such a motion would no longer have been premature) our review would include the September 22 hearing. We conclude "the postponement that extend[ed] the trial date beyond the *Hicks* date," *Tunnel*, 466 Md. at 589, occurred at the September 11 hearing, but also the September 22 hearing. It was at the September 22 hearing that the parties and the administrative judge discussed the postponement, and the judge ultimately provided the parties with options for moving forward—including the potential for trial before the *Hicks* date—as we will discuss in more detail. That is all to say, the September 11 hearing was not the "final word" on the scheduling of the trial date outside of the 180-day period. *See Frazier*, 298 Md. at 428 ("we made it clear in *Hicks* . .

---

Md. 473, 476–77(1989) (*Hicks* date October 1987; motion to dismiss November 12, 1987); *Capers*, 317 Md. at 515–16 (*Hicks* date November 24, 1987; motion to dismiss December 7, 1987); *State v. Brown*, 307 Md. 651, 655 (1986) (*Hicks* date September 26, 1983; motion to dismiss March 9, 1984); *Frazier*, 298 Md. at 435, 37 (*Hicks* date December 27, 1981; motion to dismiss March 23, 1982); *Calhoun*, 299 Md. at 4 (*Hicks* date August 9, 1981; motion to dismiss October 13, 1981); *Goins*, 293 Md. at 101, 103 (*Hicks* date March 21, 1980; motion to dismiss April 14, 1980).

[13] In *Tunnel*, our Supreme Court noted that defense counsel "filed a formal, but *premature*, motion to bar [the defendant's] prosecution for violation of the *Hicks* rule.[] There was no basis for such a motion at that time, as August 1 [the *Hicks* date] was six months in the future[.]" 466 Md. at 580 (emphasis added).

. that the dismissal sanction was inapplicable to violations of [the statute] and [the rule] which did not prevent the case from being tried within the prescribed time period.").

### *Timberlake has not demonstrated that the September 22 hearing violates CP § 6-103 or Rule 4-271*

Reviewing the September 22 hearing as the proceeding that ultimately determined the trial would be held after the *Hicks* date (as we would had Timberlake moved to dismiss after the expiration of the 180 days), we nevertheless would not find it violates the statute or rule: an administrative judge made a good cause finding for postponing Timberlake's trial until after the *Hicks* date, and Timberlake has not demonstrated that that judge clearly abused his discretion or argued that good cause was lacking as a matter of law. *See Frazier*, 298 Md. at 454 ("the trial judge [on a motion to dismiss for an alleged *Hicks* violation] (as well as an appellate court) shall not find an absence of good cause unless the defendant meets the burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law.").

### *Timberlake effectively consented to the postponement of his trial beyond the* **Hicks** *date*

Perhaps just as critically, the administrative judge offered to try to move the trial date back within the 180-day period, but Timberlake did not pursue this offer and said his calendar was still amenable to the February 1-2 trial date. In our view, because it was not too late to prevent a *Hicks* violation, Timberlake's action equates to consent.[14] Had

---

[14] At oral argument Timberlake disagreed with this notion, arguing that because the *Hicks* violation had already occurred on September 11, the error was beyond repair. Further, he argued that because the judge had already said he would find good cause to delay trial, there could be no consent at this "late" stage for what had already been done. For the reasons discussed above, we find these arguments to be meritless.

Timberlake taken the judge up on this offer and the court had been able to move the trial prior to January 29, 2021, there would be no question that *Hicks* had not been violated. It would make little sense if where Timberlake did not pursue the opportunity to move his trial back before the *Hicks* date while it was still a possibility, he could nonetheless reap the windfall of having his case dismissed due to the delay. *See State v. Brown*, 307 Md. 651, 658 (1986) (explaining "the sanction of dismissal is inapplicable 'where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of [the rule],'" and distinguishing it from a waiver scenario: "This is not because the defendant, by his action or consent, has 'waived' the requirements of [the statute] and [the rule]. . . Rather, it is because '[i]t would ... be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation.'") (quoting *Hicks*, 285 Md. at 335).

Finding both Timberlake's arguments to be without merit, we affirm.

**THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY IS AFFIRMED. APPELLANT TO PAY THE COSTS.**